EDWARD W. SMITHERS (121268)
ews@smitherslf.com
MARY ANN O'HARA (136379)
mao@smitherslf.com
SMITHERS LAW FIRM
303 Twin Dolphin Drive
Suite 600
Redwood City, California 94065
Telephone: (408) 271-1200

Attorneys for Plaintiffs,
GENESIS 1 OIL SERVICES LLC;
TIVOLI, INC; and SLINGSHOT
PEOPLE, LLC

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENESIS 1 OIL SERVICES LLC, a Delaware limited liability company; TIVOLI, INC., a Texas corporation; and SLINGSHOT PEOPLE, LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> WISMANN GROUP, LLC, a California LLC; WILLIAM WISMANN, an individual, <br><br> Defendants. | **CASE NO.** <br><br> **COMPLAINT FOR:** <br><br> **(1)    TRADE SECRET MISAPPROPRIATION IN VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016;** <br><br> **(2)    BREACH OF OIL SERVICES CONTRACT;** <br><br> **(3)    BREACH OF OPEN INVOICE AGREEMENT** <br><br> **(4)    BREACH OF FIDUCIARY DUTY;** <br><br> **(5)    INTENTIONAL NONDISCLOSURE** <br><br> **(6)    INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;** <br><br> **(7)    NEGLIGENT INTERFERENCE WITH ECONOMIC ADVANTAGE;** <br><br> **(8)    CONSTRUCTIVE TRUST AND ACCOUNTING; AND** <br><br> **(9)    DECLARATORY RELIEF.** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Genesis 1 Oil Services LLC ("Genesis") Tivoli, Inc. ("Tivoli") and Slingshot People, LLC ("Slingshot") (collectively "Plaintiffs") hereby allege as follows against defendants Wismann Group, LLC ("WG") and William Wismann ("Wismann") (collectively "Defendants"):

**INTRODUCTION**

1. Genesis is a limited liability company formed in September 2019 by Plaintiffs and Defendants to commercialize novel oil technology to clean and reclaim oil during the exploration, drilling and refinement processes to minimize toxic waste, carbon dioxide emissions and global warming. Genesis provided Defendants a 42.5% membership interest in exchange for an exclusive license to the Oil Separation Technology and related technologies ("OST") developed by Defendants. Genesis has spent hundreds of hours and thousands of dollars developing its client base for the OST through branding, marketing and sales efforts. ("Genesis Client Information"). The client identities are extremely valuable in that the market for the OST is limited and requires extensive industry contacts to develop the client relationships.

2. Plaintiffs have recently discovered that Defendants are marketing the OST themselves on their website in an effort to divert sales

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

1

away from Genesis.  Plaintiffs have further discovered that Defendants are directly soliciting Genesis clients to further divert sales away from Genesis. Defendants' marketing of the OST and client solicitation is particularly brazen given Wismann's fiduciary duties owed as a manager of Genesis, and that he only learned of the proprietary Genesis Client Information as a result of his duties for Genesis.

3.     Plaintiffs are now before this Court to preserve the status quo with a temporary restraining order preventing Defendants from:

a.     soliciting Genesis clients;

b.     disclosing or utilizing the proprietary Genesis Client Information pending resolution of the case; and

c.     disclosing, marketing or transferring the OST to any third-party pending resolution of the case.


Absent injunctive relief, Genesis will not be able to carry on its business. The potential lost profits are at a minimum tens of millions of dollars—and the prospect of recovering the diverted customers unlikely at best.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

2

**JURISDICTION AND VENUE**

4.    This Court has subject matter jurisdiction over the claims asserted herein under 28 U.S.C. §§ 1331 and 1367, and 18 U.S.C. § 1836(c). This Court has supplemental jurisdiction over the state law claims asserted herein because they are related to, arise from a common nucleus of operative facts as, and are part of the same case and controversy as Genesis' federal claim.

5.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and Defendants contractually consented to jurisdiction and venue in a California court.

**PARTIES**

6.    Genesis is a limited liability company organized under Delaware law.  Genesis was formed by its members Tivoli, Slingshot, and WG.  Genesis is operated by its Chief Manager Jimmy Smith on behalf of Slingshot, Susan Adelman on behalf of Tivoli, and Egypt McKee on behalf of Slingshot.  Genesis' principal place of business is in Irvine, California.

7.    Tivoli is a corporation organized under Texas law, and owns a 15% membership interest in Genesis.  Tivoli's principal place of

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

3

business is in Santa Monica, California.

8.     Slingshot is a limited liability company organized under California law, and owns a 42.5% membership interest in Genesis. Slingshot's principal place of business is in Irvine, California.

9.     WG is a limited liability company formed under California law, and owns a 42.5% membership interest in Genesis. Wismann on behalf of WG is a former manager of Genesis. WG's principal place of business, on information and belief, is in Camarillo, California.

10.     Wismann is an individual that dominated WG and is its alter ego. Wismann's residence, on information and belief, is in Camarillo, California. Equity requires the corporate separateness of WG be ignored, and that Wismann be held to be the "alter ego" of WG, and thereby personally liable for the debts of WG.


**FACTUAL BACKGROUND**

**A.     Summary of Allegations**

11.     Wismann pitched himself as the inventor of the OST-- groundbreaking technology for oil companies to clean oil and reclaim its components while minimizing environmental damage and costs. The OST

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

4

significantly reduces carbon dioxide emissions and accordingly combats

global warming.  Tivoli, Slingshot, and WG agreed to form a limited liability

company—Genesis—to commercialize and market the OST described by

Defendants at that time as "CP3".  (For ease of reference, OST refers to

the "CP3" and related technologies that WG agreed to exclusively license

to Genesis—as well as the trademark pending name "DayWon™" that

Genesis is currently using to market the OST under as more fully discussed

below.)

12.    The Parties' agreement was documented as the Oil

Field/Pipeline Cleaning Services Contract ("Oil Services Contract") and

requires WG to exclusively license the OST to Genesis.    The Oil

Services Contract requires WG to "use its best commercial efforts to

perform the Services in a manner satisfactory to" Genesis.   As part of

the Oil Services Contract, WG received a 42.5% membership interest in

Genesis.

13.    WG has taken the Genesis equity and $322,000 in

funding under the Oil Services Contract—but refuses to exclusively

license the OST to Genesis.  WG has further failed to provide the Oil

Services Prototype which utilizes the OST or the White Paper/Trade

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

5

Secret Report/Patent ("Trade Secret Report") detailing the OST as required under the Open Invoice Agreement between Genesis and Defendants.

14.     Defendants continue to wrongfully retain possession of Genesis' trade secrets to the exclusion of Genesis.  Plaintiffs expect that Defendants will attempt to sell those trade secrets to a third party—and irreparably harm Genesis' business.  Defendants have already solicited at least one Genesis customer in an attempt to divert OST sales away from Genesis and to Defendants.  A temporary restraining order is necessary to preclude such a transfer or customer solicitations pending a trial on the merits.

15.     Similarly, Plaintiffs are extremely concerned that Defendants will transfer to a third party the Oil Services Prototype and Trade Secret Report that Plaintiffs have already paid for under the Oil Services Contract and Open Invoice Agreement.  If Defendants are not so restrained, the damage to Genesis caused by having to compete against its own member and former manager Wismann is irreparable.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

6

## B.   Negotiations to Commercialize OST

16.    The Parties in 2019 began discussions to commercialize the OST offered by Defendants—referred to by Defendants as "CP3."  The OST involves in part a chemical formula that oil field operators can use to separate oil sludge, tar sands, or other materials saturated with oil or various hydrocarbons into constituent parts for cleaning and reclamation in an economical and environmentally sound manner.

17.    As part of that effort, the Parties formed the "Special Purpose Vehicle" as Genesis--with Tivoli providing $500,000 in funding for that entity.  Slingshot was tasked with providing the creative, marketing and sales operations for the newly created entity based upon the OST provided by Defendants.

18.    An early draft of the agreement outlining the deal terms required WG to provide only a non-exclusive license.  Through negotiations, Genesis secured the right to an exclusive license as documented in the Oil Services Contract executed by the Parties referenced below.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

7

### C.   The Oil Services Contract

19.    The Oil Services Contract provides in pertinent part at pp. 1-2:

It is the understanding of the Parties:

That T [Tivoli], WG [Wismann Group] and SP [Slingshot] are desirous to create a Special Purpose Vehicle (SPV), (which would be a Delaware corporation or LLC) in order to license certain Intellectual Property owned by WG, specifically the separation technology (CP3). Such SPV shall be created promptly following execution of this Contract [sic]

that the SPV would enter into an exclusive Oil Field/Pipeline Cleaning Services license for the technology as it pertains [sic] the separation of hydrocarbons from water/aggregate and for oil recovery.

that T, WG and SP will work in the SPV for the commercialization of the technology,

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

WHEREAS, T, WG, AND SP desire to start a new SPV in Delaware that will obtain a licensing contract from WG for the "Separation" technology CP3.

20.    The Oil Services Contract further provides at p. 2:

**Technical Services and Representations**

WG agrees to provide the Technical Services in accordance with and subject to the terms and conditions of this contract to the SPV.

WG hereby warrants and represents to the SPV as follows:

WG has the necessary experience required to provide the Services.

WG shall use its best commercial efforts to perform the Services in a manner satisfactory to the SPV. The SPV has the sole prerogative to decide if and how to implement WG's advice and  recommendations.

WG's entering into this contract and the performance of the Services hereunder will not conflict with or violate any contract, undertaking or obligation to which WG is a party or by which

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

WG is otherwise bound.

WG is not authorized to, and shall not, act on behalf of or bind the SPV in anyway. [sic]

21.    In addition, the Oil Services Contract imposes extensive Confidentiality obligations on the Parties providing in pertinent part at p. 3:

**Intellectual Property.**

Neither party nor its employees shall disclose for any reason to any third party or use for its or their own benefit or the benefit of any third party any confidential information, including any works, inventions, products, processes, apparatuses, designs or within one year after which disclosure of confidential information would clearly no longer be of any value to any potential competitor-whichever period is longer. This includes intellectual property that is improved, created, invented, discovered, conceived, originated or reduced to practice, relating in any way to the Services.

22.    The Oil Services Contract also includes a "Confidentiality and Non-Disclosure" obligation at p. 4 providing in

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

10

pertinent part:

### Confidentiality and Non-Disclosure.

The parties will not during the Term of this Contract, except as directed or authorized in writing, disclose to any third party (including any employees or other agent or representative of the parties), use for the party's own benefit or the benefit of any third party, copy or make notes of any confidential knowledge or trade secrets or any other proprietary knowledge or information, other than that which is in the public domain or within party's knowledge prior to the date of this Contract, of or relating to the Services, which may come to party's knowledge during the Term of this Contract.

The Oil Services Contract defines "Confidential Information" to include "all technical and business information of party [sic] . . . related to the Services that Parties learn during the term of this Contract."      The "Intellectual Property" and "Confidentiality and Non-Disclosure" provisions of the Oil Services Contract impose explicit obligations on the Parties—including Defendants--to maintain as confidential the OST. A true and correct copy of the Oil Services Contract is attached hereto

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

11

as Ex. 1.

23.    The Oil Services Contract contains an informal dispute resolution provision at pp. 4-5 requiring the parties to discuss settlement of any dispute before commencing arbitration.  The Oil Services Contract at p. 5 specifically authorizes a party to file suit for provisional remedies prior to arbitration and that the Parties consent to jurisdiction/venue of a California court:

> While a dispute is being discussed as provided above and/or prior to the appointment of all of the arbitrators, either party may seek provisional remedies, including, but not limited to, temporary restraining orders and preliminary injunctions, in any court or administrative agency having jurisdiction thereof. After the appointment of all of the arbitrators, the arbitrators may grant such provisional remedies as the arbitrators, in their sole discretion, deem necessary and appropriate**.**

> The Parties hereto irrevocably consent to jurisdiction and venue: (a) in California, in connection with any arbitration proceeding relating to this Contract, and (b) in any federal or

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

state court in California, in connection with any court proceeding relating to this Contract.

24.     The Oil Services Contract at Schedule A provides Tivoli with a right of first refusal for additional projects utilizing the OST:

This Special Purpose Vehicle is exclusive to Oil Field/Pipeline Cleaning Services.

For any and all other Special Purpose Vehicle business opportunities with CP3/separation, such as-but not limited to-downhole recovery, tar sands oil recovery and precious metals separation, T will have the option to participate at a minimum ownership stake of 15% by investing the required capital. Payment schedule for the required capitalization, as provided by T

25.     The same day WG signed the Oil Services Contract, Wismann sent an email to the Slingshot and Tivoli representatives:

Here are the signature pages for the agreement. . .It is my pleasure and privilege to share this technology with you and participate in the building of its distribution.

26.     The next day, Wismann confirmed that the SPV was

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

13

formed in Delaware under the name "Genesis 1 Oil Services LLC."  He

further confirmed in an email that day to Tivoli representative Adelman:

> This is the Genesis of a business that we all will give our focus
>
> and expertise to help flourish and prosper.

27.     In reliance upon the Oil Services Contract, and

Wismann's representations, Tivoli transferred to Genesis and Genesis

transferred to WG the sum of $322,000 over the next several weeks as

outlined below.

28.     At no time prior to receiving $322,000 under the Oil

Services Contract, did Defendants disclose that they intended to

misappropriate the OST for themselves, or use the funds received from

Genesis for purposes unrelated to Genesis. Unbeknownst to the Plaintiffs,

Defendants would embark on a scheme to misappropriate Genesis funds

for their own use, and ultimately ignore WG's obligations under the Oil

Services Agreement.

**D.     Defendants Send Open Invoice Agreement to Genesis**

29.     On September 16, 2019, WG sent to Genesis "INVOICE

#100" for $100,000.  That WG invoice provides in pertinent part:

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

> This will be an open invoice for the start-up of the company,
> set-up of the Laboratory and Shop, Designing and Building of
> the Oil Services Prototype, writing the Trade Secret
> Report/White Paper/Patent, according to the Budget and
> Timeline that will be generated within the first 30 days.

A true and correct copy of the Open Invoice Agreement is attached hereto as Ex. 2.

30.     In compliance with the Open Invoice Agreement, Genesis provided the Budget and Timeline.

31.     Slingshot confirmed in a September 30, 2019 email to Defendants that WG would build the Oil Services Prototype for $322,000—and that Slingshot would be budgeted $175,000 for the Genesis creative, marketing, and sales operations.  (The remaining $3000 in funding was used "to initiate legal work" to create Genesis as set forth in Schedule A to the Oil Services Contract.)

### E.     Genesis Completes Payments to Defendants Under Oil Services Contract and Open Invoice Agreement

32.     In reliance upon WG's representations, Genesis—through funds supplied by Tivoli--transferred the $322,000 requested by WG under

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

the Oil Services Contract and Open Invoice Agreement:

    a.    On September 16, 2019, Genesis sent a first payment of $100,000 to WG;

    b.    On October 7, 2019, Genesis sent a second payment of $100,000 to WG;

    c.    On November 7, 2019, Genesis sent a third payment of $100,000 to WG; and

    d.    On December 9, 2019, Genesis sent the final payment of $22,000 to WG.

### F.    OST Demonstration by Genesis to Potential Customers

33.    Genesis held various product demonstrations for potential Genesis customers—including a February 2020 presentation to a client with business operations in Belize.  As part of those product demonstrations, Defendants touted the benefits of the OST.  Those meeting attendees were required to sign "Non-Disclosure Agreements" to protect the confidentiality of the OST and the proprietary Genesis Client Information.  Wismann attended several product demonstrations where the proprietary Genesis Client Information was disclosed.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

### G. Genesis Brands and Trademarks DayWon™ For the Oil Separation Technology

34.     Slingshot, as part of the creative services provided to Genesis, branded the name DayWon™ for the OST.  Genesis has applied for trademark protection for DayWon™, and at all pertinent times has used the (tm) symbol to protect the Genesis rights in the mark.

### H. Genesis' Customer Relationships Disrupted Because Defendants Fail to Honor the Oil Services Contract and Open Invoice Agreement

35.     Genesis expended considerable time and effort marketing the OST to various companies.  Those marketing efforts included trademarking the OST as "DayWon™", locating potential customers, and making sales presentations.

36.     As can be expected, as part of a customer's due diligence concerning the OST, the customers requested to review the Genesis exclusive license for the OST—along with the Oil Services Prototype and Trade Secret Report.

37.     Despite Defendants' receipt of substantial Genesis equity—and $322,000 under the Oil Services Contract and Open Invoice Agreement—Defendants failed to provide the exclusive license, the Oil

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

Services Prototype, or the Trade Secret Report.  The failure of Defendants to provide the required exclusive license, Oil Services Prototype, and Trade Secret Report jeopardized Genesis' efforts to market and sell the DayWon™ technology and continues to hinder those efforts.  Those efforts include Genesis' current discussions with Belize client for multi-million dollar oil services contract—as well as discussions with potential clients in Texas.

**I.      Defendants' Website Markets OST As Their Own Product**

38.     Plaintiffs recently learned that Defendants were marketing the OST as their own product.  The Defendants' website under the "Our Technology" tab describes "CP3" as part of "our current IP project" and "our proprietary chemical compound":

**A snapshot of our current IP project**
**PURE OIL DISTILLATION**

OUR CURRENT PROJECT, CALLED PURE OIL DISTILLATION, IS A PROCESS TECHNOLOGY THAT ISOLATES HYDROCARBONS FROM WATER AND AGGREGATE THAT CAN BE USED IN MANY FIELDS OF USE. THIS DISTILLATION PROCESS USES OUR PROPRIETARY CHEMICAL COMPOUND CALLED CP3 THAT IS NON-TOXIC, NON HAZARDOUS AND

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

18

**DOES NOT USE HIGH TEMPERATURES OR PRESSURES TO CREATE AN**

**EXTREMELY LOW COST, CLOSED LOOP SYSTEM FOR ENHANCED OIL**

**REFINEMENT.**

**SEE 5 BENEFITS BELOW OF THIS CUTTING EDGE TECHNOLOGY:**

[Yellow Highlighting added];

39. Defendants are marketing the OST on their own—despite the fact that Genesis provided WG with significant equity in Genesis—as well as $322,000--to exclusively license the OST technology to Genesis. Genesis is currently marketing the OST under the trademark pending "DayWon™--with Defendants marketing the same product as "CP3" sowing confusion and havoc in the market.

       **J.**     **Defendants Confirm Refusal to Perform Contractual and Fiduciary Obligations at September 29, 2020 Meeting**

40. Genesis complied with the dispute resolution procedures required under the Oil Services Contract, meeting with Defendants in Spring/Summer 2020 an effort to secure Defendants' compliance with the Oil Services Contract and Open Invoice Agreement before commencing suit.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

41.     At the noticed Genesis Annual Meeting held on September 29, 2020, Defendants made explicit their intention to ignore their contractual obligations under the Oil Services Contract and Open Invoice Agreement:

a.     When asked if Defendants intended to market the OST themselves—and to the detriment of Genesis—Wismann refused to  respond to the question.

b.     When asked when Defendants would supply the Trade Secret Report required under the Open Invoice Agreement, Wismann responded that the document would never be provided to Genesis.

42.     Defendants conducted themselves at the September 29, 2020 meeting as though:

a.     the Oil Services and Open Invoice Agreements were not binding legal contracts;

b.     Defendants had not received significant Genesis equity to perform under the Oil Services Contract and Open Invoice Agreement.

c.     Defendants had not received $322,000 in payments to

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

perform under the Oil Services Contract and Invoice Agreement.

43.    Wismann on behalf of WG was removed as a Genesis manager at this meeting, and Egypt McKee on behalf of Slingshot was voted in as a Genesis manager.  Jimmy Smith of Slingshot was retained as the Genesis Chief Manager and Susan Adelman of Tivoli was retained as a Genesis manager.

**K.    Defendants Solicit Genesis Client**

44.    In early October, Genesis learned that Defendants had misappropriated proprietary Genesis Client Information concerning the Genesis client in Belize that attended the February 2020 Genesis presentation.  Wismann as a Genesis manager attended that February 2020 presentation.  That proprietary Genesis Client Information included the client contact information and the particular product needs of the client in Belize.  Defendants used that proprietary Genesis Client Information in an effort to divert sales away from Genesis and to Defendants.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

21

## **FIRST CAUSE OF ACTION**

### **(Violation of Defend Trade Secrets Act of 2016)**

45.     Genesis incorporates paragraphs 1 through 44 as though fully set forth herein.

46.     Defendants misappropriated Genesis' trade secrets concerning the proprietary Genesis Client Information which constitutes a protectable trade secret owned by Genesis.

47.     Defendants further misappropriated Genesis' trade secrets concerning the OST which constitutes a protectable trade secret of Genesis as a licensee as set forth in 18 U.S.C. § 1839(3) and (4). Specifically, Genesis is the owner of the trade secret concerning the Oil Separation Technology as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4).

48.     At all material times, Genesis' trade secrets concerning the proprietary Genesis Client Information and the OST have been related to, a product or service used in, or intended for use in, interstate or foreign commerce.

49.     At all material times, the trade secrets concerning the

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

proprietary Genesis Client Information and the OST have derived

independent economic value, actual or potential, from not being generally

known to, and not being readily ascertainable through proper means by,

another person who can obtain economic value from the disclosure or use

of the information.

      50.   At all material times, Genesis took reasonable measures

to keep its trade secrets secret, including abiding by the Confidentiality

obligations under the Oil Services Contract.  Genesis did not disclose or

permit disclosure of such information to anyone other than authorized

employees. independent contractors, and potential customers to be utilized

for the benefit of Genesis.

      51.   Defendants misappropriated Genesis' trade secrets

concerning the proprietary Genesis Client Information by using the

following improper means:

        a.   in breach of their "Confidentiality" and "best commercial

            efforts" obligations under the Oil Services Contract,

            Defendants used  proprietary Genesis Client Information to

            contact a client in Belize in an effort to divert sales away

            from Genesis and to Defendants;

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

23

b.    in breach of his fiduciary obligation, Wismann used proprietary   Genesis Client Information to contact a client in Belize to   economically benefit Defendants and damage Genesis.

52.    Defendants misappropriated Genesis' trade secrets concerning the OST using the following improper means:

a.    in breach of their obligations under the Oil Services Contract, Defendants refused to exclusively license the OST to Genesis;

b.    in breach of their obligations under the Oil Services Contract, Defendants are marketing on the WG website the DayWon™ technology under the name "CP3";

c.    in breach of their confidentiality obligations under the Oil Services Contract, Defendants are offering the DayWon™ technology for sale under the name "CP3";

d.    in breach of their obligations under the Open Invoice Agreement,  Defendants refused to provide the Oil Services Prototype to Genesis; and

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

24

e.   in breach of its obligations under the Open Invoice

Agreement, Defendants refused to provide the Trade

Secret Report to Genesis.

53.   Defendants' misappropriation was intentional, knowing, willful, malicious, fraudulent, and oppressive. Defendants have obstructed and continue to obstruct Genesis' efforts to remedy its misappropriation.

54.   If Defendants are not enjoined, they will continue to misappropriate, use, or destroy Genesis' trade secrets concerning the proprietary Genesis Client Information and OST to Defendants' benefit and/or Genesis' detriment.

55.   As a direct and proximate result of Defendants' conduct, Genesis has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages.

56.   Due to Defendants' willful, malicious, and unlawful conduct, Genesis demands and is entitled to compensatory damages, exemplary damages, and attorney's fees and costs in amounts to be proven at trial.

57.   Because Genesis' damages cannot be adequately

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

compensated through remedies at law alone, Genesis also seeks

preliminary and permanent injunctive relief to prevent Defendants from

disclosing the trade secrets concerning the proprietary Genesis Client

Information and OST, and offering DayWon™ technology for sale in

violation of the exclusive license required under Oil Services Contract.

58.   Genesis has been deprived of its rights and property and

will continue to suffer irreparable harm absent injunctive relief from this

Court.

WHEREFORE, Genesis seeks relief as set forth below:

## SECOND CAUSE OF ACTION
### (Breach of Oil Services Contract)

59.   Plaintiffs hereby incorporate paragraphs 1-44 as though

fully set forth herein.

60.   The Oil Services Contract required the formation of a

limited liability company to carry out the business described therein.

61.   Genesis was formed as that limited liability company and

is accordingly a third-party beneficiary of the Oil Services Contract, and

entitled to enforce the terms of the Oil Services Contract.  For ease of

reference, the limited liability company referenced in the Oil Services

Contract is referred to interchangeably as "Genesis."

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

62.    WG, Slingshot and Tivoli entered into the Oil Services Contract for the purpose of commercializing the technology offered by WG. The Oil Services Contract requires WG to grant an exclusive license to Genesis for the technology.

63.    As part of the Oil Services Contract, Defendants received a membership interest in Genesis of 42.5%, and was later named a manager.

64.    The Oil Services Contract requires Defendants to maintain the Confidentiality of the Genesis business operations—including the OST.

65.    Tivoli performed its obligations under the Oil Services Contract by providing funding of $500,000--with $322,000 provided to WG and $178,000 provided to Slingshot.

66.    Slingshot performed its obligations under the Oil Services Contract by providing creative, marketing and sales operations for Genesis and the DayWon™ technology.

67.    WG breached the Oil Services Contract by failing to transfer the OST to Genesis pursuant to an exclusive license.

68.    Defendants breached the Oil Services Contract by failing

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

27

to use their "best commercial efforts" to perform their obligations thereunder.

69.   Defendants breached the Oil Services Contract by marketing the Oil Services Technology for sale in breach of the "Confidentiality and Non-Disclosure" requirements set forth in the Oil Services Contract.

70.   Defendants further breached the Oil Services Contract by contacting at least one Genesis client located in Belize in an attempt to sell the CP3 product to that customer directly, and cut Genesis out of the sale entirely.

71.   As a proximate result of Defendants' breach of the Oil Services Contract, Genesis has been thwarted in its efforts to market the DayWon™ technology to various potential customers, including but not limited to potential customers located in Texas and Belize.

72.   Plaintiffs seek specific performance of the Oil Services Contract—specifically an order requiring WG to transfer the OST to Genesis pursuant to an exclusive license.

73.   Plaintiffs further seek a preliminary injunction preventing Defendants from marketing or licensing the OST to any third party pending

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

resolution of this suit.

74.     Plaintiffs have been damaged in an amount set forth below, and preserve both their legal and equitable remedies in this pleading.

WHEREFORE, Plaintiffs seek relief as set forth below:

## THIRD CAUSE OF ACTION
### (Breach of Open Invoice Agreement)

75.     Genesis hereby incorporates paragraphs 1-44 as though fully set forth herein.

76.     Defendants sent to Genesis an Open Invoice Agreement stating:

This will be an open invoice for the start-up of the company, set-up of the Laboratory and Shop, Designing and Building of the Oil Services Prototype, writing the Trade Secret Report/White Paper/Patent, according to the Budget and Timeline that will be generated within the first 30 days.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

A true and correct copy of the Open Invoice Agreement is attached hereto as Ex. 2.

77.     Genesis performed its obligations under the Open Invoice Agreement by paying WG the billed $100,000, and later providing WG an additional $222,000 in funding for a total of $322,000.

78.     Defendants breached the Open Invoice Agreement by:

a       failing to design and build the Oil Services Prototype; and

b.      failing to provide the Trade Secret Report.

79.     Genesis seeks specific performance of the Open Invoice Agreement, specifically an order requiring Defendants to provide Genesis with the Oil Services Prototype and the Trade Secret Report.

80.     Genesis further seeks a preliminary injunction preventing Defendants from providing the Oil Services Prototype and the Trade Secret Report to any third party pending resolution of this suit.

81.     Genesis has been damaged in an amount set forth below, and preserves both its legal and equitable remedies in this pleading.

WHEREFORE, Genesis seeks relief as set forth below:

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

30

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

82.     Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1-44, inclusive.

83.     Wismann, on behalf of WG, was a manager of Genesis owing a fiduciary duty to Genesis and its managers Tivoli and Slingshot.

84.     As part of that fiduciary duty, Wismann had a duty to refrain from self-dealing.  At all times, Wismann owed a duty to Plaintiffs to deal fairly and in good faith with the Plaintiffs, and to do nothing to jeopardize the Plaintiffs' interests.  Wismann's duties as a fiduciary included a duty of due care and loyalty to Genesis and its managers Tivoli and Slingshot.

85.      The Plaintiffs placed their trust and confidence in the integrity and fidelity of Wismann.  Wismann was aware that Plaintiffs were relying upon Wismann to protect the interests of Plaintiffs, including the Genesis funds and Genesis' exclusive license to the OST.

86.     Wismann breached that fiduciary duty by engaging in self-dealing to the detriment of Plaintiffs, including, on information and belief, using Genesis funds for projects unrelated to Genesis.

87.     Wismann further breached that fiduciary duty by failing to

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

exclusively license the OST to Genesis, and instead retained the OST to the detriment of Genesis.

88.    Wismann further breached that fiduciary duty by contacting at least one Genesis client located in Belize in an attempt to sell the CP3 product to that customer directly, and cut Genesis out of the sale entirely.

89.    As a fiduciary, Wismann owed a duty of full disclosure to the Plaintiffs.  In breach of that duty, Wismann failed to disclose the following material facts:

      a.    that he intended to misappropriate Genesis funds for purposes unrelated to Genesis;

      b.    that he intended to withhold the OST from Genesis, and thereby preventing Genesis from entering into potentially lucrative oil services contracts with customers;

      c.    that he intended to withhold the design and building of the Oil Services Prototype;

      d.    that he intended to withhold the Trade Secret Report;

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

32

e.    that he intended through WG to market the OST under the name "CP3"—despite his obligation to exclusively license the OST to Genesis; and

f.    that Defendants would contact at least one Genesis client located in Belize in an attempt to sell the CP3 product to that customer directly, and cut Genesis out of the sale entirely.

90.    WG at all pertinent times aided and abetted Wismann's breach of fiduciary duty:  WG was aware of Wismann's breach of fiduciary duty, WG gave substantial assistance or encouragement to Wismann, and WG's conduct was a substantial factor in causing harm to Plaintiffs.

91.    The actions of Defendants, as alleged above, are malicious, oppressive, and fraudulent, such that punitive damages in a sum sufficient to punish and deter future such conduct by the Defendants is proper.

WHEREFORE, Plaintiffs seek relief as set forth below.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

## FIFTH CAUSE OF ACTION
### (Intentional Nondisclosure)

92.     Plaintiffs reallege and incorporate by reference each and every allegation in paragraphs 1-44, inclusive.

93.     Defendants failed to disclose the following material factual information in an attempt to convince Plaintiffs to enter into the Oil Services Contract and the Open Invoice Agreement:

      a.    that Defendants intended to misappropriate Genesis funds for purposes unrelated to Genesis;

      b.    that Defendants intended to withhold the OST from Genesis, and thereby preventing Genesis from entering into potentially lucrative oil services contracts with customers;

      c.    that Defendants intended to withhold the design and building of the Oil Services Prototype;

      d.    that Defendants intended to withhold the Trade Secret Report;

      e.    that Defendants intended through WG to market the OST under the name "CP3"—despite Defendants' obligation to

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

34

exclusively license the OST to Genesis; and

f.      that Defendants would contact at least one Genesis client

located in Belize in an attempt to sell the CP3 product to

that customer directly, and cut Genesis out of the sale

entirely.

94.     Defendants' failure to disclose this material factual

information was intentional and designed to induce Genesis to provide

Defendants significant Genesis equity and funds in the amount of

$322,000.

95.     In justifiable reliance upon the above-mentioned

intentional nondisclosures, Genesis provided significant Genesis equity and

funds in the amount of $322,000.  Had Genesis been apprised of the

material facts that Defendants concealed, then Genesis would have

provided neither the significant Genesis equity nor the $322,000 to

Defendants.

96.     In justifiable reliance upon the above-mentioned

intentional nondisclosures, Tivoli provided $500,000 in funds to Genesis.

Had Tivoli been apprised of the material facts that Defendants concealed,

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

35

then Tivoli would have provided neither the funds to Genesis nor consented to Defendants' participation in Genesis as a member/manager.

97.     In justifiable reliance upon the above-mentioned intentional nondisclosures, Slingshot provided extensive creative, marketing and sales services to Genesis. Had Slingshot been apprised of the material facts that Defendants concealed, then Slingshot would have provided neither those services nor consented to Defendants' participation in Genesis as a member/manager.

98.     The actions of Defendants, as alleged above, are malicious, oppressive, and fraudulent, such that punitive damages in a sum sufficient to punish and deter future such conduct by Defendants is proper.

99.     As a direct and proximate result of these intentional nondisclosures, Plaintiffs have been damaged in a sum set forth below.

WHEREFORE, Plaintiffs seek relief as set forth below:

### SIXTH CAUSE OF ACTION
### (Intentional Interference With Prospective Economic Advantage)

100.   Genesis realleges and incorporates by reference each and every allegation in paragraphs 1-44, inclusive.

101.   Genesis was in an economic relationship with

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

various potential customers, including customers with operations in Texas and Belize, to provide those companies with the DayWon™ technology.

102.  As part of these discussions with potential customers, Genesis was requested to provide information concerning its exclusive license for the OST, as well as provide an Oil Services Prototype for the customer to test as part of the customer's due diligence process.

103.  Genesis' relationship with these potential customers was of value in that the relationships represented a probable future economic benefit to Genesis.

104.  Defendants were at all times informed of Genesis' relationships with these potential customers, and the necessity of WG complying with its obligations under the Oil Services Contract and Open Invoice Agreement to:

        a.     use the $322,000 transferred to WG to benefit only Genesis;

        b.     transfer the OST to Genesis pursuant to an exclusive license;

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

37

c.    design and build the Oil Services Prototype; and

d.    provide the Trade Secret Report.

105.  Defendants intended to disrupt the relationships between Genesis and its potential customers in hopes of extracting additional funding from Genesis to the benefit of Defendants and the detriment of Genesis.

106.  Because WG failed to comply with its contractual obligations alleged above, Genesis has not been able to enter into potentially lucrative contracts with these potential customers for the DayWon™ technology.

107.  In addition to disrupting Genesis' economic relationships by breaching its contractual obligations, Defendants further contacted at least one Genesis client located in Belize in an attempt to sell the CP3 product to that customer directly and cut Genesis out of the sale entirely.

108.  Genesis has suffered lost income because it has not been able to enter into oil services contracts with these potential customers.

109.  By intentionally interfering with Genesis' prospective economic advantage, Defendants have acted with malice, fraud and oppression such that punitive damages in a sum sufficient to punish and

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

deter such future conduct is proper.

WHEREFORE, Genesis seeks relief as set forth below:

## SEVENTH CAUSE OF ACTION
### (Negligent Interference With Prospective Economic Advantage)

110.  Genesis realleges and incorporates by reference each and every allegation in paragraphs 1-44, inclusive.

111.   Genesis was in an economic relationship with various potential customers, including customers with operations in Texas and Belize, to provide those companies with the DayWon™ technology.

112.  As part of these discussions with potential customers, Genesis was requested to provide information concerning its exclusive license for the OST, as well as provide an Oil Services Prototype for the customer to test as part of the customer's due diligence process.

113.   Genesis' relationships with these potential customers was of value in that the relationships represented a probable future economic benefit to Genesis.

114.   Defendants were at all times informed of Genesis'

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

relationships with these potential customers, and the necessity of WG

complying with its obligations under the Oil Services Contract and Open

Invoice Agreement to:

      a.    use the $322,000 transferred to WG to benefit only

            Genesis;

      b.    transfer the OST to Genesis pursuant to an

            exclusive license;

      c.    design and build the Oil Services Prototype; and

      d.    provide the Trade Secret Report.

      115.   Defendants should have known that Genesis'

relationships with its potential customers would be disrupted if Defendants

failed to act with reasonable care.  Defendants negligently, and without due

care, disrupted the relationships between Genesis and its potential

customers.

      116.   In addition to disrupting Genesis' economic relationships

by breaching its contractual obligations, Defendants further contacted at

least one Genesis client located in Belize in an attempt to sell the CP3

product to that customer directly and cut Genesis out of the sale entirely.

      117.   Genesis has suffered lost income because it has not been

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

able to enter into oil services contracts with these potential customers.

WHEREFORE, Genesis seeks relief as set forth below:

## EIGHTH CAUSE OF ACTION
### (Constructive Trust and Accounting)

118.   Genesis realleges and incorporates by reference each and every allegation in paragraphs 1-44, inclusive.

119.   Defendants benefited from misappropriating Genesis assets for their own personal use, including at least some of the $322,000 provided by Genesis to WG for purposes unrelated to Genesis.

120.   Defendants have further benefited from retaining the OST that WG was required to exclusively license to Genesis.

121.   Defendants will be unjustly enriched unless required to return those benefits to Genesis.

122.   Equity requires that the assets wrongfully acquired by Defendants be transferred to Genesis to be held in constructive trust in favor of Genesis so as to prevent the unjust enrichment of WG.

123.   Equity requires that any property acquired by Defendants with the wrongfully acquired assets be held in constructive trust in favor of Genesis.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

124.   Equity requires that Defendants account for the $322,000 transferred to Defendants under the Oil Services Contract and the Open Invoice Agreement.

125.   Genesis seeks a preliminary injunction preventing Defendants from marketing or licensing the OST to any third-party pending resolution of this suit, including contacting any potential Genesis customers in a scheme to sell directly to those potential Genesis customers.

WHEREFORE, Genesis seeks relief as set forth below:

## NINTH CAUSE OF ACTION
### (Declaratory Relief)

126.   Genesis realleges and incorporates by reference each and every allegation in paragraphs 1-44, inclusive.

127.   An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their rights and duties. Genesis contends that WG is required to comply with its obligations under the Oil Services Contract and Open Invoice Agreement to:

a.   utilize the $322,000 in funds transferred to WG

solely for Genesis purposes;

b.   transfer the OSTto Genesis pursuant to an exclusive

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

license that is fully paid up, royalty-free and worldwide;

c.    use their "best commercial efforts" to perform the Oil Services Contract;

d.    design and build the Oil Services Prototype;

e.    provide Plaintiffs with the Trade Secret Report; and

f.    provide Tivoli with a 15% equity interest in all other business opportunities utilizing the OST, including but not limited to down hole recovery, tar sands oil recovery and precious metals separation.

128.  Defendants contend that they have no such obligations.

129.   Genesis **s**eeks a judicial determination of whether Defendants are obligated under the Oil Services Contract and Open Invoice Agreement to perform as alleged above.

130.  A judicial declaration pursuant to Code of Civil Procedure section 1060 is necessary and appropriate at this time to (1) to prevent any further misappropriation of Genesis assets by Defendants; and (2) allow Genesis to move forward with its business of commercializing the

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

43

DayWon™ technology.

WHEREFORE, Genesis seeks relief as set forth below:

**FIRST CAUSE OF ACTION BY GENESIS AGAINST DEFENDANTS**

1.    For general and compensatory damages according to proof at trial, plus interest thereon as allowed by law against Defendants.

2.    For temporary, preliminary and permanent injunctive relief preventing Defendants, their agents and servants, and all persons or entities acting in concert with them, from engaging in the following conduct:

a.    disclosing trade secret information concerning the OST to any third party unrelated to Plaintiffs;

b.    contacting any potential Genesis customers in a scheme to sell directly to those potential Genesis customers, including but not limited to the customer in Belize already solicited by Defendants;

c.    marketing or selling the OST currently identified on the WG website as CP3;

d.    entering into any agreement to license or transfer the OST to any party other than Genesis;

e.    providing the Oil Services Prototype to any party other

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

than  Genesis;

    f.    providing the Trade Secret Report to any party other than

Genesis;

    g.    destroying, altering, transmitting, or moving any

documents, in whatever form, that may contain or reflect

any trade secret  information concerning the OST; and

    h.    any and all other such acts as the Court deems

appropriate for injunctive relief.

    3.    For exemplary damages in an amount sufficient to punish

and deter Defendants.

**SECOND CAUSE OF ACTION BY PLAINTIFFS AGAINST DEFENDANTS**

    1.    For general and compensatory damages according to

proof at trial, plus interest thereon as allowed by law against Defendants.

    2.    Plaintiffs seek a temporary restraining order, preliminary

injunction, and permanent injunction preventing Defendants from marketing

or licensing the OST to any third-party pending resolution of this suit.

    3.    Plaintiffs seek specific performance of the Oil Services

Contract—specifically an order requiring WG to transfer the OST to

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

45

Genesis pursuant to an exclusive license.

4.     Plaintiffs seek specific performance of the Oil Services Contract—specifically an order requiring Defendants to use their "best commercial efforts" to comply with the Oil Services Contact and refrain from contacting potential Genesis customers directly in a scheme to sell directly to those potential Genesis customers.

5.     Plaintiffs preserve both their legal and equitable remedies in this pleading.

**THIRD CAUSE OF ACTION BY GENESIS AGAINST DEFENDANTS**

1.     For general and compensatory damages according to proof at trial, plus interest thereon as allowed by law against Defendants.

2.     Plaintiffs seek a temporary restraining order, preliminary injunction, and permanent injunction preventing Defendants from providing the Oil Services Prototype and the Trade Secret Report to any third party pending resolution of this suit.

3.     Plaintiffs seek specific performance of the Open Invoice Agreement, specifically an order requiring WG to provide Genesis with the Oil Services Prototype and the Trade Secret Report.

4.     Plaintiffs preserve both their legal and equitable remedies

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

in this pleading.

**FOURTH CAUSE OF ACTION BY PLAINTIFFS AGAINST DEFENDANTS**

      1.    For general and compensatory damages according to proof at trial, plus interest thereon as allowed by law against the Defendants.

      2.    Plaintiffs seek a temporary restraining order, preliminary injunction, and permanent injunction preventing Defendants from marketing or licensing the OST to any third-party pending resolution of this suit, including but not limited to the client in Belize already solicited by Defendants.

      3.    For punitive damages in an amount sufficient to punish and deter Defendants.

**FIFTH CAUSE OF ACTION BY PLAINTIFFS AGAINST DEFENDANTS**

      1.    For general and compensatory damages according to proof at trial, plus interest thereon as allowed by law against Defendants;

      2.    For punitive damages in an amount sufficient to punish and deter Defendants.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

47

**SIXTH CAUSE OF ACTION BY GENESIS AGAINST DEFENDANTS**

1.     For general and compensatory damages according to proof at trial, plus interest thereon as allowed by law against Defendants;

2.     For punitive damages in an amount sufficient to punish and deter Defendants.

**SEVENTH CAUSE OF ACTION BY GENESIS AGAINST DEFENDANTS**

1.     For general and compensatory damages according to proof at trial, plus interest thereon as allowed by law against Defendants.

**EIGHTH CAUSE OF ACTION BY GENESIS AGAINST DEFENDANTS**

1.     For an order establishing a constructive trust over the OST, the Oil Services Prototype and the Trade Secret Report.

2.     For an order requiring Defendants to transfer by exclusive license the OST to Plaintiffs.

3.     For an order requiring Defendants to transfer to Plaintiffs the Oil Services Prototype and the Trade Secret Report.

4.     For an order requiring Defendants to transfer to Plaintiffs the Trade Secret Report.

5.     For an order preventing Defendants from marketing or licensing the OST to any third party, including but not limited to the client in

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

48

Belize already solicited by Defendants.

6.    For an order establishing a constructive trust in favor of Genesis over any and all Genesis assets acquired by Defendants or transferred by Defendants to any third party, including but not limited to the misappropriated Genesis assets.

7.    An order directing that Defendants:

    a.    account for the $322,000 paid by Genesis to Defendants;

    b.    account for any profits made as a result of the purported transfer or use of Genesis assets, and for all distributions made from Genesis assets;

    c.    pay to Genesis the value of the use of any of its property;

    d.    return or replace any asset lost to Genesis as a result of any purported transfer of any Genesis asset.

8.    An order for payment to Genesis by Defendants of the amount due from Defendants, and each of them, as a result of said accounting, together with interest thereon.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

**NINTH CAUSE OF ACTION**

1.      For a declaration that Genesis is the owner of OST.

2.      For a declaration that Genesis is the owner of the Oil Services Prototype.

3.      For a declaration that Genesis is the owner of the Trade Secret Report.

4.      For an order requiring Defendants to transfer by exclusive license the OST to Plaintiffs.

5.      For an order requiring Defendants to transfer the Oil Services Prototype and the Trade Secret Report to Plaintiffs.

6.      For an order preventing Defendants from marketing or licensing the OST to any third party, including but not limited to the client in Belize already solicited by Defendants.

7.      For an order requiring Defendants to transfer the Trade Secret Report to Plaintiffs.

8.      For an order requiring Defendants to provide Tivoli with a 15% equity interest in all other business opportunities utilizing the OST, including but not limited to down hole recovery, tar sands oil recovery and precious metals separation.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

9.　　For an order establishing a constructive trust in favor of Genesis over any and all Genesis assets acquired by Defendants or transferred by Defendants to any third party, including but not limited to the misappropriated Genesis assets.

10.　　For an order directing that Defendants:

     a.　　account for the $322,000 paid by Genesis to Defendants;

     b.　　account for any profits made as a result of the purported   transfer or use of Genesis assets, and for all distributions made from Genesis assets;

     c.　　pay to Genesis the value of the use of any of its property;

     d.　　return or replace any asset lost to Genesis as a result of any purported transfer of any Genesis asset.

11.　　An order for payment to Genesis by Defendants of the amount due from Defendants, and each of them, as a result of said accounting, together with interest thereon.

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

**ALL CAUSES OF ACTION**

1.    For costs of suit;

2.    For attorneys' fees where allowed by contract or law;

3.    For prejudgment interest; and

4.    For such other and further relief as the Court deems appropriate.

DATED:  November 2nd, 2020        SMITHERS LAW FIRM

By:

/s/ _____
Edward W. Smithers

Attorneys for Plaintiffs,
GENESIS 1 OIL SERVICES LLC,
TIVOLI, INC; SLINGSHOT
PEOPLE, LLC

COMPLAINT
CASE NO.
SMITHERS LAW FIRM

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a jury trial on all causes of action triable by jury in the above complaint.

DATED:  November 2nd, 2020                SMITHERS LAW FIRM


By:

/s/ _____
Edward W. Smithers

Attorneys for Plaintiffs,
GENESIS 1 OIL SERVICES LLC,
TIVOLI, INC; SLINGSHOT
PEOPLE, LLC

COMPLAINT
CASE NO.
SMITHERS LAW FIRM