UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  8:20-cv-02114-JLS-ADS                    Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

       Melissa Kunig                           N/A
       Deputy Clerk                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANTS:

           Not Present                        Not Present

**PROCEEDINGS:  (IN CHAMBERS)  ORDER ENTERING PRELIMINARY
                        INJUNCTION**

On November 12, 2020, the Court denied Plaintiffs' *Ex Parte* Application for a
Temporary Restraining Order (Doc. 25) and ordered Defendants to show cause why a
preliminary injunction should not issue.  (TRO Order, Doc. 27.)  The Court considered
the memorandum attached to Plaintiffs' Application as its opening brief in support of a
preliminary injunction (Mem, Doc. 25-22).  Defendants opposed, and Plaintiffs replied.
(Opp., Doc. 45; Reply, Doc. 46).  After holding a hearing and considering the papers, the
Court ENTERS a preliminary injunction against Defendants.

## I.   BACKGROUND

This action concerns a dispute over the rights to a novel oil technology to clean
and reclaim oil while minimizing toxic waste and carbon dioxide emissions.  Plaintiff
Genesis 1 Oil Services, Inc. ("Genesis") is a limited liability company formed in
September 2019 by Plaintiffs Tivoli, Inc. ("Tivoli") and Slingshot People, LLC
("Slingshot"), and Defendants William Wismann ("Wismann") and Wismann Group,
LLC ("WG").  (First Amended Complaint ("FAC") ¶ 1; Smith Decl. ¶ 12, Doc. 25-5.)
In 2017, Defendant Wismann and Jimmy Smith, the Chief Manager for Genesis
and a manager of Slingshot, discussed Wismann's project involving the Oil Separation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                          Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

Technology ("OST").  The OST is a technology for cleaning and reclaiming oil in an "economical and environmentally-friendly manner," with the potential to "revolutionize the oil services industry" by "reduc[ing] toxic waste, carbon dioxide emissions, and combat[ing] global warming."  (Smith Decl. ¶¶ 3–4.)  After further discussions between Wismann on behalf of WG, Jimmy Smith on behalf of Slingshot, and Susan Adelman on behalf of Tivoli, "it was agreed that [they] would create a limited liability company ('Genesis') to commercialize the OST."[1]  (*Id.* ¶ 7.)

## A.     Oil Services Contract

The parties' agreement was documented in the Oil Field/Pipeline Cleaning Services Contract ("Oil Services Contract").  (Oil Services Contract, Doc. 25-6.)  The Oil Services Contract states that "[i]t is the understanding of the Parties" that:

- Tivoli, WG, and Slingshot "are desirous to create a Special Purpose Vehicle (SPV) . . . in order to license certain Intellectual Property owned by WG, specifically the separation technology (CP3).  Such SPV shall be created promptly following execution of this Contract."  (Oil Services Contract at 2.)
- The "SPV would enter into an exclusive Oil Field/Pipeline Cleaning Services license for the technology as it pertains the [sic] separation of hydrocarbons from water/aggregate and for oil recovery.  (*Id.*)
- Tivoli, WG, and Slingshot "will work in the SPV for the commercialization of the technology."  (*Id.*)

The Oil Services Contract also specifies the parties' respective warranties and representations.  WG warranted that it "shall use its best commercial efforts to perform the Services in a manner satisfactory to the SPV."  (*Id.* at 3.)  Slingshot agreed to

---

[1] The parties also use the term "CP3" technology to refer to the OST, and the Oil Services Contract uses the "CP3" label.  (FAC ¶ 11.)  Here, the term OST refers also to the CP3 and related technologies.  (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                    Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

"provide the Marketing, Branding, Managerial and Legal Services in accordance with
and subject to the terms and conditions of this Contract to the SPV." (*Id.*)  Tivoli agreed
"to provide financing of $500,000." (*Id.* at 4.)  The contract also contained provisions
related to intellectual property, confidentiality, indemnification, and dispute resolution.
(*Id.* at 4–6.)  The contract specified ownership of Genesis as follows: 15% Tivoli; 42.5%
Slingshot; 42.5% WG.

The payment schedule for the $500,000 of capitalization, provided by Tivoli,
specified that Tivoli would provide $3,000 upon signature of the Contract to initiate legal
work to create the SPV and the remaining $497,000 immediately following the legal
formation of the SPV.  (Schedule A to Oil Services Contract, Doc. 25-6 at 8.)  The
contract was signed on September 5, 2019.  (*Id.*)  On September 12, 2019, the parties
entered into the Limited Liability Company Operating Agreement for Genesis 1 Oil
Services LLC.  (Smith Decl. ¶ 12; Operating Agreement, Doc. 25-9.)  Smith, Adelman,
and Wismann were listed as the managers of Genesis.  (Operating Agreement at 8.)

### B.     Open Invoice Agreement

On September 16, 2019, following the signing of the contract and formation of
Genesis, WG sent to Genesis an invoice for $100,000.  (Smith Decl. ¶ 13; Open Invoice
Agreement, Doc. 25-10.)  The invoice provides in pertinent part:

> This will be an open invoice for the start-up of the company, set-up of the
> Laboratory and Shop, Designing and Building of the Oil Services
> Prototype, writing the Trade Secret Report/White Paper/Patent, according
> to the Budget and Timeline that will be generated within the first 30 days.

(Open Invoice Agreement.)  In compliance with the Open Invoice Agreement, Genesis
provided the budget and timeline.  (Smith Decl. ¶ 14.)  The managers agreed that
Wismann and WG would provide to Genesis the laboratory, Oil Services Prototype, and
Trade Secret Report for $322,000.  (*Id.*)  An additional $175,000 would be budgeted to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                              Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

Slingshot for Genesis's marketing and sales operations.  (*Id.*)  The remaining $3,000 of
the initial funding provided by Tivoli was used for the legal work to create Genesis.

Genesis, through the funds supplied by Tivoli, transferred the $322,000 to WG.
(*Id.* ¶ 15.)  On September 16, 2019, Genesis sent a first payment of $100,000 to WG; on
October 7, Genesis sent a second payment of $100,000 to WG; on November 7, Genesis
sent a third payment of $100,000 to WG; and on December 9, Genesis sent the final
payment of $22,000 to WG.  (*Id*.)

### C.    OST Demonstration by Genesis to Potential Customers

Genesis held product demonstrations for potential Genesis customers, including a
February 2020 presentation to a client with operations in Belize.  (Smith Decl. ¶ 16.)
Meeting attendees were required to sign non-disclosure agreements to protect the
confidentiality of the OST and proprietary client information "such as client identities,
product needs, and budgeting issues" ("Genesis Client Information").  (*Id.*; Non-
Disclosure Agreement, Doc. 25-11.)  During the February 2020 presentation, Wismann
showed the Oil Services Prototype he was in the process of building.  (Smith Decl. ¶ 17.)
Wismann also attended several other product demonstrations "where the proprietary
Genesis OST and Client Information was [sic] disclosed."  (*Id.* ¶ 19.)

### D.    DayWon Trademark Application

Slingshot, as part of its role in providing creative services to Genesis, branded the
name DayWon™ for the OST.  (Smith Decl. ¶ 20.)  Genesis has applied for trademark
protection for DayWon™, "and at all pertinent times has used the ™ symbol to protect
the Genesis rights in the mark."  (*Id.*)

### E.    The Alleged Breach and Instant Lawsuit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                                Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

Plaintiffs allege that despite Defendants' receipt of a 42.5% stake in Genesis and $322,000 under the Oil Services Contract and Open Invoice Agreement, Defendants have failed to provide "the exclusive OST license, the Oil Services Prototype, and the Trade Secret Report." (Smith Decl. ¶ 22.)  This failure has "jeopardized Genesis's efforts to market and sell the DayWon™ technology." (*Id.* ¶ 23.)  Plaintiffs also learned that Defendants were marketing the OST as their own product on their website.

Pursuant to the dispute resolution procedures required under the Oil Services Contract, Plaintiffs met with Defendants "in Spring/Summer 2019 in an effort to secure Defendants' compliance with the Oil Services Contract." (*Id.* ¶ 26.)  At the September 29, 2020 Genesis Annual Meeting, Defendants "made explicit their intention to ignore their contractual obligations under the Oil Services Contract and Open Invoice Agreement." (*Id.* ¶ 27.)  Wismann on behalf of WG was removed as a Genesis manager at this meeting, and Egypt McKee on behalf of Slingshot was voted in as a Genesis manager.  (*Id.* ¶ 29.)

Shortly after that meeting, Plaintiffs learned that Defendants had "misappropriated proprietary Genesis Client Information concerning the Genesis client in Belize that attended the February 2020 Genesis presentation." (*Id.* ¶ 30.)  Specifically, Defendants "had attempted to obtain the contact information for the executives of the Belize client, and had spoken to one of the executives directly." (*Id.*; *see also* Gobie Decl. ¶¶ 8–10, Doc. 25-18.)

On November 2, 2020, Plaintiffs filed the instant action, asserting eight claims in their amended complaint: (1) trade secret misappropriation in violation of the Defend Trade Secrets Act of 2016 (DTSA); (2) breach of the Oil Services Contract; (3) breach of the Open Invoice Agreement; (4) breach of fiduciary duty; (5) intentional nondisclosure; (6) intentional interference with prospective economic advantage; (7) negligent interference with economic advantage; and (8) declaratory relief.  (FAC.)

On November 12, 2020, the Court denied Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order (Doc. 25) and ordered Defendants to show cause why a preliminary injunction should not issue.  (TRO Order, Doc. 27.)  The Court considered

**CIVIL MINUTES – GENERAL**                                                              **5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                    Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

the memorandum attached to Plaintiffs' Application as its opening brief in support of a preliminary injunction (Mem, Doc. 25-22).  Plaintiffs' requested preliminary injunctive relief can be broadly sorted into two categories: (1) enjoining Defendants from misappropriating trade secrets concerning the OST; and (2) enjoining Defendants from misappropriating trade secrets related to Genesis's client base.  (Mem. at 1.)

## II.    <u>LEGAL STANDARD</u>

"A preliminary injunction is an extraordinary and drastic remedy."  *Munaf v. Geren*, 553 U.S. 674, 676 (2008) (internal quotations marks omitted).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex v. Camenisch*, 451 U.S. 390, 395 (1981).  A district court should issue a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  This requires the district court to make findings of fact and conclusions of law.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1157 (9th Cir. 2007); *see also Hicks v. Neal*, No. C 12-2207 SI (pr), 2012 WL 3791399, at *3 (N.D. Cal. Aug. 31, 2012) ("In other words, the movant has to demonstrate, not merely allege, his entitlement to a preliminary injunction . . . . [A]llegations that may be sufficient for pleading purposes simply are not enough to prove his entitlement to a preliminary injunction.").

The party seeking the injunction bears the burden of demonstrating that preliminary injunctive relief is justified.  *Granny Good Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 441 (1974).  To obtain a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *Winter*, 555 U.S. at 22 (2008).  This "requires the plaintiff to make a showing on all four prongs."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                    Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

The Ninth Circuit employs the "serious questions" version of the "sliding scale" approach when applying the four-element *Winter* test.  *Id*. at 1134.  "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id*. at 1135 (citation omitted).

## III.   DISCUSSION

Plaintiffs' FAC alleges eight claims for relief, but they seek a preliminary injunction based on only three claims: trade secret misappropriation, breach of contract, and breach of fiduciary duty.  Because the Court concludes that their claim of trade secret misappropriation supports their requested injunction, the Court addresses the *Winter* factors as to that claim only.

### A.   Likelihood of Success on the Merits

To prevail on their trade-secret claim under the DTSA, Plaintiffs must prove that (1) they own a trade secret; (2) Defendants misappropriated the trade secret; and (3) they were damaged by Defendants' actions.  *Alta Devices, Inc. v. LG Elecs., Inc*., 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018).  Under the DTSA, a court may grant an injunction "to prevent any actual or threatened misappropriation."  18 U.S.C. § 1836(b)(3)(A)(i).

#### 1.   Existence of a Trade Secret

A "trade secret" is defined as information that (1) "the owner thereof has taken reasonable measures to keep . . . secret," and that (2) "derives independent economic value, actual or potential, from not being generally known to . . . another person who can

---

**CIVIL MINUTES – GENERAL**                                                              7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                    Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3)(A)–(B).  Generally, to obtain a preliminary injunction, "the party seeking injunctive relief must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade" to permit the defendant and the Court to "ascertain at least the boundaries within which the secret lies." *Agency Solutions.Com, LLC v. TriZetto Grp., Inc*., 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) (citing *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)) (internal quotation marks omitted).

Here, Plaintiffs contend that they own protectable trade secrets in Genesis's client information and the OST.  (Mem. at 18–21.)

### a.  **Genesis Client Information**

"The Ninth Circuit has held that a customer list qualifies as a trade secret 'because it allows a competitor . . . to direct its sales efforts to those potential customers that are already' doing business with the plaintiff." *Extreme Reach, Inc. v. Spotgenie Partners, LLC*, Case No. CV 13-07563-DMG (JCGx), 2013 WL 12081182, at *3 (C.D. Cal. Nov. 22, 2013) (citing *MAI Sys. Corp. v. Peak Computer, Inc*., 991 F.2d 511, 521 (9th Cir. 1993); *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1330 (9th Cir. 1980)).  "The most important consideration is whether the information is readily accessible to a reasonably diligent competitor." *Hollingsworth Solderless Terminal Co*., 622 F.2d at 1332.  Further, "where [a business] has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market." *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1088 (E.D. Cal. 2012) (citing *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514 (1997)).

The FAC identifies Genesis's proprietary client information as the base of potential clients including "client contacts, product needs, resources, budgets, approval protocols, and timelines for the specific client products."  (FAC ¶ 1.)  Plaintiffs state they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                    Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

"spent hundreds of hours and thousands of dollars developing its base of potential customers for the OST" (Mem. at 18; Smith Decl. ¶ 18).  Egypt McKee, the Chief Operating Officer ("COO") for Genesis avers that he personally "spent hundreds of hours" developing Genesis's potential base of customers.  (McKee Decl. ¶ 8, Doc. 25-17.)  The Genesis team has also spent "in excess of $175,000 in its client development, branding, and marketing efforts for the OST."  (*Id.*)  Further, as COO, McKee attended several presentations to potential clients; McKee estimates that "Genesis presented to four client groups from Texas and three client groups from Belize."  (*Id.* ¶ 12.)  One of those presentations was in February 2020 and included McKee's client in Belize, who was introduced to Genesis through McKee's efforts.  (*Id.* ¶¶ 13–14; *see also id.* ¶¶ 4–6 (discussing the development of the Belize client base).)  Since that time, McKee states he has regularly communicated and corresponded with the Belize client concerning the OST.  (*Id.* ¶ 15.)  Based on those communications, McKee states that Genesis is currently discussing a Memorandum of Understanding concerning the oil services contract to be entered into between Genesis and one of the Belize clients.  (*Id.* ¶ 16.)  McKee estimates the client in Belize to be worth potentially "in excess of tens of millions of dollars."  (*Id.* ¶ 18.)

Plaintiffs have also demonstrated that they have taken "reasonable measures" to keep Genesis's client information secret.  *See* 18 U.S.C. § 1839(3)(A).  First, information related to Genesis's business is protected under the "Confidentiality" and "Non-Disclosure" provisions of the Oil Services Contract.  (Oil Services Contract at 5.)  Second, meeting attendees of various product demonstrations for potential Genesis customers were required to sign non-disclosure agreements "to protect the confidentiality of the OST and the proprietary client information such as client identities, product needs, and budgeting issues."  (Smith Decl. ¶ 16; Non-Disclosure Agreement, Doc. 25-11.)  Defendants have not otherwise offered any evidence or support for the conclusory statement, raised in the introduction but then abandoned in the brief, that "the alleged trade secret customer list is simply information readily available in the public domain."  (Opp. at 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                              Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

In opposition, Defendant argues that "Genesis is a newly formed SPV and has no client or customer history." (Opp. at 16.)  But this blanket assertion is directly contradicted by Plaintiffs' evidence, which documents McKee's personal efforts to develop a client base—particularly in Belize—since as early as the fall of 2018.[2] (McKee Decl. ¶¶ 4–5; 8.)  Defendants broadly object to McKee's declaration as "hearsay," but do not identify the exact portions of the declaration to which Defendants object. (*See* Opp. at 16.)  To the extent Defendants argue that the entire declaration is inadmissible, this objection is overruled.  While some portions of the declaration may contain hearsay, many portions detailing McKee's personal efforts to develop the client base are *not* hearsay.  Further, a district court may "consider hearsay in deciding whether to issue a preliminary injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

Accordingly, the Court concludes that Plaintiffs likely own a protectable trade secret interest in Genesis's client information.

### b.  OST

The injunction Plaintiffs seek is also partly based on their alleged trade secret interest in the OST.  Specifically, Plaintiffs argue that the OST is a "trade secret enforceable by Genesis as the exclusive licensee." (Mem. at 19.)  This argument relies on their interpretation of the Oil Services Contract, under which they contend that Genesis granted Defendants a 42.5% ownership stake in Genesis "in exchange for an exclusive license to the OST." (Mem. at 6; Smith Decl. ¶9.)

---

[2]  Although Genesis was not formed as an entity until September 2019, McKee states that he "started working on the project that eventually became Genesis in early 2018." (McKee Decl. ¶ 2.)  McKee's travels to Belize in the fall of 2018 to "market the OST project" became the foundation for Genesis's client base in Belize. (*Id.* ¶¶ 4–5, 14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                         Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

As a threshold matter, a trade secret may be enforceable by a licensee.  The DTSA defines "owner" of a trade secret as "the person or entity in whom or in which rightful legal or equitable title to, *or license in*, the trade secret is reposed."  18 U.S.C. § 1839(4).  Further, "trade secrets can be jointly owned and, in fact, a joint owner can bring a claim for trade secret misappropriation against the other owner."  *StrikePoint Trading, LLC v. Sabolyk*, No. SACV 07-1073-DOC-MLGx, 2008 WL 11334084, at *6 (C.D. Cal. Dec. 22, 2008) (citing *Morton v. Rank America, In*c., 812 F. Supp. 1062, 1074 (C.D. Cal. 1993).)  Defendants do not dispute that, if Plaintiffs owned an exclusive license in the OST, the OST would be enforceable by Genesis as a trade secret.

Rather, Defendants mainly dispute Plaintiffs' underlying premise that the Oil Services Contract granted Plaintiffs an exclusive license in the OST.  Defendants argue that, regardless of title, the Oil Services Contract is an unenforceable "agreement to agree."  (Opp. at 8.)  Under California law, "[n]o naked agreement to agree constitutes a contract."[3]  *Cable & Computer Tech. Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1035 (9th Cir. 2000); *Autry v. Republic Prods.*, 30 Cal. 2d 144, 151, 180 P.2d 888, 893 (1947) ("[N]either law nor equity provides a remedy for breach of an agreement to agree in the future.")

First, Defendants argue that the terms of the Oil Services Contract did not grant Plaintiffs an exclusive license.  The Oil Services Contract provides that "the SPV *would* enter into an exclusive Oil Field/Pipeline Cleaning Services license for the technology."  (Opp. at 9, quoting Oil Services Contract (emphasis added).)  Defendants argue that "the word 'would' is a precatory word used to express a plan and is not a binding term."  (*Id*.)  As further evidence that the Oil Services Contract is a non-binding agreement to agree, Defendant argues that "[t]here is no 'this for that'" in the agreement.  (*Id.*)  For example,

---

[3]  Defendants cite to Washington case law for this proposition.  (*See* Opp. at 8.) As Plaintiffs point out, this dispute is governed by California law.  (Reply at 13; Oil Services Contract ("This Contract shall be governed and construed in accordance with the laws of the state of California without regards to its choice of law principles.")).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                              Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

according to Defendants' reading of the Oil Services Contract, "Plaintiff Tivoli will have the option to participate by investing the required capital." (*Id*.)

Defendants' reading of the Contract, however, ignores fundamental rules of contract interpretation.  "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting[.]"  Cal. Civ. Code § 1636. "The whole of a contract is to be taken together, so as to give effect to every part[.]"  Cal. Civ. Code § 1641.  Although Defendants emphasize the use of "would" in one portion of the contract, they disregard the many definite, binding terms elsewhere in the contract. Contrary to Defendants' representation of Tivoli's funding as "optional," the contract states that "Tivoli agrees to provide financing of $500,000," and Schedule A of the Contract sets forth a payment schedule for the "*required* capitalization"—with $3,000 due from Tivoli immediately "upon signature of the Contract, [] to be used to initiate legal work to create the SPV."  (Oil Services Contract at 4, 8 (emphasis added).)  The contract states that Defendant WG "warrants and represents to the SPV . . . [that] WG shall use its best commercial efforts to perform" under the contract.  (*Id.* at 3.)  Finally, the contract specifies each parties' ownership stake in Genesis, with Defendants receiving a 42.5% stake in the company.  (*Id.* at 8.)

Further, "[t]he conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions."  *Kennecott Corp. v. Union Oil Co*., 196 Cal. App. 3d 1179, 1189, 242 Cal. Rptr. 403 (Ct. App. 1987).  Tivoli provided its promised funding of $500,000, the parties formed Genesis, and within a couple weeks of the formation, Defendants submitted an invoice to Genesis seeking a total of $322,000 for the Oil Services Prototype and Trade Secrets Report.  (*See* Open Invoice Agreement, Ex. 2 to FAC; Smith Decl. ¶¶ 13–15.)  To date, Defendants have not yet provided either of these items.  Indeed, Defendants have not pointed the Court to *anything* they provided in exchange for the $322,000 and 42.5% equity interest in Genesis.  This further supports the interpretation that an exclusive license in the OST *is* what Defendants promised to provide to Genesis under the contract.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  8:20-cv-02114-JLS-ADS                              Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

Second, Defendants argue that Plaintiffs have failed to offer evidence of a separate, written license agreement, because "when offered a license the Plaintiffs turned it down." (Opp. at 10.)  In May of 2020, "Defendant WG offered an exclusive license agreement for one specific field of use." (*Id.*)  On June 3, 2020, Plaintiffs rejected the proposed license because "it bears no resemblance to the parties' respective rights and obligations under the oil services contract," which "were relied upon by Slingshot and Tivoli in performing their obligations thereunder." (Smith Email, Ex. B to Wismann Decl., Doc. 45 at 38.)  Plaintiffs objected to the "extensive royalty payments" imposed under the proposed license agreement, since the Oil Services Contract required no royalty payments. (Mem. at 18–19.)  The proposed license agreement also "curtailed the geographic scope of the license to the United States," despite the "exclusive license" language in the Oil Services Contract; this limitation would hinder "Genesis's ability to close the transaction in Belize." (Mem. at 19.)  The evidence of the rejected agreement thus does not bolster Defendants' position that the Oil Services Contract was an "agreement to agree," since it is also consistent with Plaintiffs' position that, after entering in the contract, Defendants have since shirked their contractual obligations. Further, the DTSA defines "owner" as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed."  18 U.S.C. § 1839(4). It imposes no requirement for a written license agreement.  *Cf.* 17 U.S.C. § 204 (requiring an exclusive copyright license to be in writing).

Accordingly, the Court concludes that Plaintiffs can likely prove they own a trade secret interest in the OST.

### 2.      Misappropriation of a Trade Secret

The DTSA defines misappropriation, in relevant part, as the acquisition or use of a trade secret by "improper means."  18 U.S.C. § 1839(5).  "[T]he term improper means . . . includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                                      Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

maintain secrecy, or espionage through electronic or other means[.]" *Id.* at § 1839(6). "'[M]isappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences . . . that it is more probable than not that what plaintiffs allege happened did in fact take place." *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc*., No. 8:19-CV-00642-JLS-JDE, 2019 WL 2177262, at *9 (C.D. Cal. May 20, 2019) (quoting *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co*., No. C-04-1268 VRW, 2007 WL 2572225, at *5 (N.D. Cal. Sept. 5, 2007)) (entering preliminary injunction based on trade secret misappropriation).

### a.  **Misappropriation of Genesis Client Information**

As to Genesis's client information, Plaintiffs argue that Defendants "attended several product demonstrations where the proprietary Genesis Client Information was disclosed," and misappropriated this information to "divert sales away from Genesis and to Defendants." (Mem. at 8, 21.)  Specifically, Wismann attended the February 2020 client presentation—as a manager of Genesis at the time—that was also attended by the Belize client, and later "attempted to obtain the client contact information for the executives of the Belize client." (Smith Decl. ¶¶ 16–17, 19, 30.)

In support of the alleged misappropriation, Plaintiffs provide the declaration of Alan Gobie, one of Plaintiffs' contacts in Belize, who is the president and founder of Recological Systems Ltd. (RSL).  (Gobie Decl. ¶ 1, Doc. 25-18.)  RSL provides maritime emergency response services to Belize and the region.  (*Id*.)  Gobie also serves as a business consultant to clients in Belize "concerning their petroleum product operations." (*Id.*)  Gobie states that he began discussions with McKee in 2018 regarding the OST, having been introduced to McKee by the Belize Secretary of Energy.  (*Id.* ¶ 2.)  The OST "was of great interest to RSL and its clients because of its potential to clean up oil spills . . . in an environmentally [sic] and economic fashion." (*Id.* ¶ 3.)  Gobie attended the

---

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                              Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

February 2020 client presentation and continued to regularly communicate with McKee about potential contacts.  (*Id.* ¶¶ 5–6.)  Gobie, however, states that he recently learned that Wismann attempted to contact the CEO of his client who "is currently in discussions with Genesis to enter into the Memorandum of Understanding for the multi-million dollar oil services contract"; Wismann eventually contacted the managing director, and asked for Gobie's contact information.  (*Id.* ¶ 8.)  Gobie states that he "can think of no reason why Mr. Wismann would be directly contacting either me or one of my clients in Belize," since his business dealings on behalf of his Belize clients "are with Genesis and its representative Mr. McKee."  (*Id.* ¶ 11.)

Further, Plaintiffs argue that, as a manager of Genesis at the time, Wismann owed a fiduciary duty of loyalty to Genesis.  "It is settled that a director or officer of a corporation may not enter into a competing enterprise which cripples or injures the business of the corporation of which he is an officer or director."  *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546, 554, 31 Cal. Rptr. 104 (Ct. App. 1963).  "An officer or director may not seize for himself, to the detriment of his company, business opportunities in the company's line of activities which his company has an interest and prior claim to obtain."  *Id.*  Plaintiffs point to Wismann's fiduciary duties as evidence that Defendants used and acquired Genesis's client information by "improper means."

Defendants refute Plaintiffs' evidence of solicitation of the Belize client with one line in Wismann's declaration, stating "WG . . . has never contacted any Genesis clients, or to divert [sic] sales away from Genesis 1."  (Wismann Decl. ¶ 11, Doc. 45 at 20.)  Defendants do not address the specifics of the Gobie declaration in their opposition, or otherwise refute Plaintiffs' claim of misuse of client information in their Opposition.  (*See* Opp. at 10–11 (refuting only the argument that Defendants misappropriated the OST.)

The Court therefore concludes that Plaintiffs can likely demonstrate that Defendants have misappropriated Genesis's client information.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                              Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

### b.  **Misappropriation of the OST**

Plaintiffs argue that Defendants have misappropriated the OST by marketing it as their own product, and that this use was improper because it constituted a breach of contract—specifically, the Oil Services Contract and the Open Invoice Agreement. (Smith Decl. ¶ 24; Mem. at 21.)  Plaintiffs provided a screenshot of Defendants' website under the "Our Technology" tab, which describes "CP3" (Defendants' name for the OST) as part of "our current IP project" and "our proprietary chemical compound."  (Smith Decl. ¶ 24.)  Further, Plaintiffs fear that, because Defendants deny that Genesis has any rights to the OST, Defendants may transfer or sell the OST to a third party, which would be detrimental to Genesis's business.  (Reply at 20.)

Defendants do not deny that they are marketing the OST.  Rather, Defendants reiterate their argument that Plaintiffs have not demonstrated that they own an exclusive license in the OST, and thus Defendants cannot misappropriate the trade secret.  (Opp. at 10.)  Because the Court has concluded, however, that Plaintiffs can likely demonstrate an exclusive license for the OST under the Oil Services Contract, Defendants' argument fails.  Further, Defendants do not even address the Open Invoice Agreement, in which Defendants promised to provide an Oil Services Prototype and Trade Secret Report in exchange for the requested funds.  (*See* Opp.)

Accordingly, the Court concludes that Plaintiffs can likely demonstrate misappropriation of the OST.

### c.  **Damage**

Defendants argue that Plaintiffs have failed to demonstrate that they have been damaged by a misappropriation because "there is no criteria for measuring damages." (Opp. at 11.)  As discussed in Section III.B. *infra*, however, Plaintiffs have demonstrated at least one identifiable potential contract, based the Memorandum of Understanding with

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                              Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

the client in Belize, that would be measurably damaged by Defendants' misuse of
Genesis's proprietary information.  Defendants' argument that Plaintiffs cannot show
damages is therefore without merit.

      For the above reasons, the Court concludes that Plaintiffs have shown a likelihood
of success on the merits.

      **B.**     **Irreparable Harm**

      A party seeking a preliminary injunction must establish that he is "likely to suffer
irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20.
"Irreparable harm is traditionally defined as harm for which there is no adequate legal
remedy, such as an award of damages." *Arizona Dream Act Coalition v. Brewer*, 757
F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent-A-Ctr., Inc. v. Canyon Television &
Appliance Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 1991)).  "[I]ntangible injuries, such as
damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent–
A–Center*, 944 F.2d at 603.  "Evidence of threatened loss of prospective customers
supports a finding of irreparable harm." *Extreme Reach*, 2013 WL 12081182, at *7
(citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 841 (9th Cir.
2001); *Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1037 (C.D. Cal. 2010)).
Indeed, "an intention to make imminent or continued use of a trade secret or to disclose it
to a competitor will almost always certainly show irreparable harm." *Sun Distrib. Co.,
LLC v. Corbett*, No. 18-cv-2231-BAS-BGS, 2018 WL 4951966, at *7 (C.D. Cal. Oct. 12,
2018) (quoting *Pac. Aerospace & Elec., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1198 (E.D.
Wash. 2003)).

      As described above, Plaintiffs have provided evidence demonstrating that
Defendants have misappropriated Genesis's client information and attempted to solicit at
least one of Genesis's clients in Belize.  "[L]oss of customers and goodwill through
misappropriation of trade secrets is axiomatic irreparable harm." *Chartwell*, 2019 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                    Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

2177262, at *11.  Further, because Defendants deny that Plaintiffs have an exclusive
license to the OST under the Oil Services Contract, and have continued to market the
OST as though they are the owners, Plaintiffs also face the potential harm that—if
Defendants are not enjoined from doing so—Defendants may transfer or sell the OST to a
third party.  The potential for harm is "heightened by the fact that Genesis's
Memorandum of Understanding with the client in Belize has been signed," and is
contingent on WG "comply[ing] with its obligations under the [Oil Services Contract.]"
(Reply at 4–5; Reply McKee Decl. ¶ 4, Doc. 46-3.)  If the contract with the Belize client
were to fall through after years spent developing the relationship and negotiating terms,
Plaintiffs would suffer more than the mere loss of the economic value of the contract;
they would also suffer "intangible injuries" such as damage to their reputation and
goodwill among their contacts in Belize.  *See Rent-A-Ctr.*, 944 F.2d at 603 ("It is true that
economic injury alone does not support a finding of irreparable harm, because such injury
can be remedied by a damage award.  However, we have also recognized that intangible
injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as
irreparable harm.")

Accordingly, the Court concludes that Plaintiffs have shown that they will be
irreparably harmed in the absence of preliminary relief.

### C.     Balance of Equities

A party seeking a preliminary injunction must establish that "the balance of
equities tips in his favor." *Winter*, 555 U.S. at 20. In assessing this prong, a court must
"balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v.
Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *L.A. Mem'l Coliseum Comm'n v.
Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)).

As described above, the harm to Genesis is the loss of customers and goodwill.
Defendants argue that "[i]t is the Defendants that will be irreparably harmed by an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                          Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

injunction on Defendants' Technology," because the preliminary injunction "would be taking rightfully held rights and property from Defendants."  (Opp. at 12, 15.)  Although an injunction would prevent Defendants from soliciting Genesis clients and marketing or selling the OST pending the outcome of a trial, the Court concludes that the balance of equities still tips in Plaintiffs' favor.  Plaintiffs have provided evidence that the parties entered into an enforceable contract under which Genesis would have an exclusive license to the OST in exchange for a 42.5% stake in the business, that Genesis relied on the contract to develop a customer base and enter into agreements with clients, and that Defendants' misappropriation of Genesis's proprietary information threatens to harm Genesis's business, consumer base, and goodwill.  Defendants, on the other hand, have not provided any evidence of specific harm they would face from an injunction; they offer only general assertions that "[t]he probable harm to the Defendants is huge" (Opp. at 17).

Accordingly, this prong weighs in favor of the issuance of a preliminary injunction.

### D.    Public Interest

A party seeking a preliminary injunction must establish that "an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  The party seeking the injunction bears the initial burden of showing that the injunction is in the public interest.  *Stormans*, 586 F.3d at 1139.  However, a court need not consider public consequences that are "highly speculative."  *Id*.  In other words, a court should weigh the public interest in light of the "likely consequences of the injunction."  *Id*.

"Protection of trade secrets benefits the public interest."  *Extreme Reach*, 2013 WL 12081182, at *9 (citing *Kewanee Oil Co. v. Bicron Corp*., 416 U.S. 470, 483 (1974) ("[I]t is hard to see how the public would be benefited by disclosure of customer lists....

---

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                            Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

in fact, keeping such items secret encourages businesses to initiate new and individualized plans of operation, and constructive competition results.") ).

Accordingly, this prong weighs in favor of the issuance of a preliminary injunction.

### E.    Bond

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'"  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original).  "The burden of establishing the amount of bond necessary to secure against the wrongful issuance of an injunction rests with the defendant."  *Extreme Reach*, 2013 WL 12081182, at *9–10.

Defendants request a $7,500,000 bond for "loss profits and disruption of business," plus $185,000 for attorneys' fees and costs for a bench trial or $200,000 for a jury trial.  (Opp. at 17.)  The only evidentiary support provided for the requested bond is a declaration by Defendants' counsel, Larry Webb, in support of the portion of the bond representing attorneys' fees and costs.  (Webb Decl. ¶ 2, Doc. 45 at 27.)  Defendants offer no evidence establishing how they would suffer $7,500,000 in specific costs or damage as the result of an injunction.

Accordingly, the Court orders bond in the amount of $200,000.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-02114-JLS-ADS                                    Date: March 23, 2021
Title:  Genesis 1 Oil Services LLC et al v. Wismann Group, LLC et al

## IV.   <u>CONCLUSION</u>

1. For the above reasons, the Court hereby preliminarily ENJOINS Defendants, agents, employees, representatives, and those acting in concert with them from:

    a.  disclosing trade secret information concerning the Oil Separation Technology ("OST") to any third-party unrelated to Plaintiffs;
    b.  contacting any potential Genesis customers for the purpose of selling directly to those potential Genesis customers;
    c.  marketing or selling the OST currently identified on the WG website as CP3;
    d.  entering into any agreement to license or transfer the OST to any party other than Genesis;
    e.  providing the Oil Services Prototype to any party other than Genesis;
    f.  providing the Trade Secret Report to any party other than Genesis; and
    g.  destroying, altering, transmitting, or moving any documents, in whatever form, that may contain or reflect any trade secret information concerning the OST.

2. This Preliminary Injunction shall take effect immediately and shall remain in effect pending resolution of the merits of this case or further order of this Court.  However, if Plaintiffs fail to post a bond in the amount of $200,000 within fourteen (14) days of the entry of this Order, the Preliminary Injunction shall be deemed lifted the following day.

Initials of Deputy Clerk: mku

**CC: FISCAL**