SMITHERS LAW FIRM
EDWARD W. SMITHERS (121268)
ews@smitherslf.com
303 Twin Dolphin Drive
Suite 600
Redwood City, California 94065
Telephone: (408) 271-1200

Attorneys for Plaintiffs and Counter defendants GENESIS 1 OIL SERVICES LLC, TIVOLI REALTY INC, d/b/a TIVOLI, INC., AND SLINGSHOT PEOPLE, LLC; Counter defendants, JIMMY SMITH, EGYPT MCKEE, SUSAN ADELMAN, MICHAEL WEISMAN, AND EDWARD COLLINS

UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF CALIFORNIA

GENESIS 1 OIL SERVICES LLC, a Delaware limited liability company; TIVOLI REALTY INC., d/b/a TIVOLI, INC., a Texas corporation; and SLINGSHOT PEOPLE, LLC, a California limited liability company,

Plaintiffs,

v.

WISMANN GROUP, LLC, a California LLC; WILLIAM WISMANN, an individual,

Defendants.

AND COUNTERCLAIM

**CASE NO. 8:20-cv-02114-SSS-ADS**

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF AND COUNTER DEFENDANT GENESIS 1 OIL SERVICES LLC FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

Hearing: September 23, 2022 at 2:00 p.m.

Location: Courtroom 2, The Honorable Judge Summer S. Sykes, Second Floor, United States Courthouse, 3470 Twelfth Street, Riverside, California 92501

Complaint Filed: November 2, 2020

Preliminary Injunction Entered: March 23, 2021

Trial Date: May 15, 2023

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . | 1 |
| II. | LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . | 3 |
| | A. Summary Judgment in Favor of Genesis on its First Cause of Action for Trade Secret Misappropriation Is Properly Entered . . . . . . . . . . . . . . . . . . . . . | 3 |
| | 1. Genesis Has Standing Under the Under the Defend Trade Secrets Act. . . . . . . . . . . . . | 3 |
| | 2. The Oil Services Contract Signed and Performed by the Plaintiffs is not an Unenforceable "Agreement to Agree" or "Letter of Intent". . . . . . . . . . . . . . . . . . . . | 5 |
| | 3. Defendants Are Equitably Estopped From Denying the Exclusive License Under the Oil Services Contract . . . . . . . . . . . . . . . . . . . . | 6 |
| | B. Summary Judgment in Favor of Genesis on its Second Cause of Action for Breach of Oil Services Contract Is Properly Entered. . . . . . . . . . . . . . . . . . . | 8 |

    C. Summary Judgment in Favor of Genesis on its Third Cause of Action for Breach of Open Invoice Agreement Is Properly Entered . . . . . . . . . . . . . . 8

D. Summary Judgment in Favor of Genesis on The Counterclaim Is Properly Entered . . . . . . . . . . . . . . 9

1. Defendants' Fifth Counterclaim Alleging Genesis Breached the Oil Services Contract Is Meritless . . . . . . . . . . . . . . . . . . . . . . . 9

2. Defendants' Concede As Undisputed the Facts 95--99 Supporting Summary Judgment on the Sixth Counterclaim . . . . . . . . . . . . . . . . . . 10

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

REPLY MEMORANDUM OF POINTS AND AUTHORITIES, ETC.
CASE NO. 8:20-cv-02114-SSS-ADS
SMITHERS LAW FIRM

# TABLE OF AUTHORITIES

CASES — Page

BladeRoom Grp. Ltd. v. Facebook, Inc., 219 F. Supp. 3d 984 (N.D. Cal. 2017) . . . . . . . . . . . . . . . . 5

Cedars Sinai Med. Ctr. v. Quest Diagnostics, 2019 U.S. Dist. LEXIS 239085 (C.D. Cal. August 9, 2019) . . . . 5

Morton v. Rank America, Inc., 812 F. Supp. 1062 (C. D. Cal. 1993) . . . . . . . . . . . . . . . . . 4

Sinclair v. Aquarius Electronics, Inc., 42 Cal. App. 3d 216 (1974) . . . . . . . . . . . . . . . . . . . . . 7

Strikepoint Trading, LLC v. Sabolyk, 2008 U.S. Dist. LEXIS 130788 (C.D. Cal. December 22, 2008) . . . 4

Sutton v. Warner, 12 Cal. App. 4th 415 (1993) . . . . . . . . . . . . . . . . . . . . . 9

Page

STATUTES

17 U.S.C. § 204 . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1836 et seq. . . . . . . . . . . . . . . . . . . . . . . . . passim

Cal. Civ. Code § 3426 et seq. . . . . . . . . . . . . . . . . . . . . . 4-5

REPLY MEMORANDUM OF POINTS AND AUTHORITIES, ETC.
CASE NO. 8:20-cv-02114-SSS-ADS
SMITHERS LAW FIRM

Plaintiff and Counter Defendant Genesis 1 Oil Services LLC ("Genesis") hereby submits this Reply Memorandum of Points and Authorities in support of its Motion for Summary Judgment, or Alternatively, Partial Summary Judgment, against Wismann Group, LLC ("WG") and William Wismann (collectively "Defendants").

## I. SUMMARY OF ARGUMENT

Defendants' Opposition Memo ("Opp. Memo.") and Separate Statement of Genuine Disputes ("Opp. Sep. Statement") do not provided evidence disputing the following facts:

1. As part of the Oil Field/Pipeline Cleaning Services Contract ("Oil Services Contract") WG received $322,000; Undisputed Material Fact ("UMF") 14.

2. As part of the Oil Services Contract, WG was granted a 42.5% equity interest in Genesis; Ex 7, Oil Field/Pipeline Cleaning Services Contract ("Oil Services Contract"), p. 7;

3. The Oil Services Contract requires WG to use its "best commercial efforts" to perform; UMF 4;

4. WG did not provide the Oil Services Prototype required under the Open Invoice Agreement; UMF 27;

5. WG did not provide the Trade Secret Report required under the

Open Invoice Agreement; UMF 28;

6. The Court has rejected Defendants' "agreement to agree" argument in the extensive March 23, 2021 Order Granting Preliminary Injunction, Doc. 50 ("Injunction Order") against Defendants; Ex. 25.

7. Discovery following the Injunction Order has revealed that WG signed a Technology License Agreement for the OST dated July 23, 2020 with a company named Pure Oil Distillation, LLC ("Pure Oil"); UMF 33;

8. WG purports to license to Pure Oil the same OST that WG earlier exclusively licensed to Genesis under the Oil Services Contract. UMF 37;

9. Genesis has signed a February 2021 Memorandum of Understanding with a client in Belize to license/sublicense the OST; UMF 39; and

10. Genesis is unable to perform the transaction with the client in Belize until Defendants comply with their obligations under the Oil Services Contract and Open Invoice Agreement; UMF 39.

Summary judgment in favor of Genesis is properly entered on the first, second, and third causes of action of the First Amended Complaint. Summary judgment is also properly entered in favor of Genesis on the fifth and sixth causes of action of the Counterclaim.

## II. LEGAL ARGUMENT

### A. Summary Judgment in Favor of Genesis on its First Cause of Action for Trade Secret Misappropriation Claim is Properly Entered

#### 1. Genesis Has Standing Under the Defend Trade Secrets Act

Defendants again argue that Genesis lacks standing under the Defend Trade Secrets Act, 18 U.S.C. Section 1836 et. seq. ("DTSA") because Genesis is not the 'owner' of the CP3 technology." Opp. Memo., p. 8. The Court's Injunction Order addresses why Genesis has standing as a "licensee" under the DTSA:

> Second, Defendants argue that Plaintiffs have failed to offer evidence of a separate, written license agreement, because "when offered a license the Plaintiffs turned it down." (Opp. at 10.) In May of 2020, "Defendant WG offered an exclusive license agreement for one specific field of use." (*Id.*) On June 3, 2020, Plaintiffs rejected the proposed license because "it bears no resemblance to the parties' respective rights and obligations under the oil services contract," which "were relied upon by Slingshot and Tivoli in performing their obligations thereunder." (Smith Email, Ex. B to Wismann Decl., Doc. 45 at 38.) Plaintiffs objected to the "extensive royalty payments" imposed under the proposed license agreement, since the Oil Services Contract required no royalty payments. (Mem. at 18-19.)

The proposed license agreement also "curtailed the geographic scope of the license to the United States," despite the "exclusive license" language in the Oil Services Contract; this limitation would hinder "Genesis's ability to close the transaction in Belize." (Mem. at 19.) The evidence of the rejected agreement thus does not bolster Defendants' position that the Oil Services Contract was an "agreement to agree," since it is also consistent with Plaintiffs' position that, after entering in the contract, Defendants have since shirked their contractual obligations.

Further, the DTSA defines "owner" as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." *18 U.S.C. § 1839(4)*. It imposes no requirement for a written license agreement. *Cf. 17 U.S.C. § 204* (requiring an exclusive copyright license to be in writing).

EI, Ex. 25, Injunction Order, p. 13.[1]

Defendants argue that the DTSA has "a narrower standing requirement of actual ownership" compared to the California Uniform Trade Secret Act ("CUTSA"),

---

[1] See also, Strikepoint Trading, LLC v. Sabolyk, 2008 U.S. Dist. LEXIS 130788 (C.D. Cal. December 22, 2008) *18 ("As a starting point, Plaintiff StrikePoint rightly points out that trade secrets can be jointly owned and, in fact, a joint owner can bring a claim for trade secret misappropriation against the other owner. Morton v. Rank America, Inc., 812 F. Supp. 1062, 1074 (C. D. Cal. 1993).").

Cal. Civ. Code Section 3426 et seq. Opp. Memo., p. 7. Defendants have it backwards: standing under the DTSA is broader than CUTSA because the DTSA expressly grants standing to licensees—while Section 3426.1 of CUTSA does not.[2] Genesis has standing for the facts and law outlined in Court's Injunction Order.

**2. The Oil Services Contract Signed and Performed by Plaintiffs is not an Unenforceable "Agreement to Agree" or "Letter of Intent"**

Defendants continue to argue that the Oil Services Contract is an "unenforceable agreement to agree." Opp. Memo., p. 11. The Court properly rejected this argument in its Injunction Order at p. 12: "Defendants' reading of the Contract, however, ignores fundamental rules of contract interpretation." Defendants' argument has not improved with age.

Defendants again support this "agreement to agree" argument by citing the efforts of Genesis to get WG to perform by entering into negotiations with WG on

---

[2] Defendants' reliance on case law here is puzzling. The first case relied upon-- BladeRoom Grp. Ltd. v. Facebook, Inc., 219 F. Supp. 3d 984, 990-991 (N.D. Cal. 2017)-—recognizes that CUTSA does not expressly include "licensees"—but concludes that standing under CUTSA extended to the plaintiff licensee. BladeRoom did not involve a DTSA claim. The second case-- Cedars Sinai Med. Ctr. v. Quest Diagnostics, 2019 U.S. Dist. LEXIS 239085 (C.D. Cal. August 9, 2019)—does involve a DTSA claim, and the Court cites the statutory language of the DTSA defining "owner" to include "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." As expected, neither case contradicts the DTSA language by finding that a trade secret licensee lacks standing under the DTSA.

an additional modified license after WG refused to perform the Oil Services Contract. Opp. Memo, p. 11. As explained by the Court, evidence that Genesis rejected WG's efforts to renegotiate the Oil Services Contract with terms much more beneficial to WG is hardly evidence that the Oil Services Contract was an "agreement to agree":

> The evidence of the rejected agreement thus does not bolster Defendants' position that the Oil Services Contract was an "agreement to agree," since it is also consistent with Plaintiffs' position that, after entering in the contract, Defendants have since shirked their contractual obligations.

EI, Ex. 25, Injunction Order, p. 13.

Wismann has, however, added a new spin on the argument by asserting at his deposition that the Oil Services Contract was now actually "a letter of intent". Reply Decl. of E. Smithers, Etc., Ex. A-3, p. 65:20-23. Pretending that the Oil Services Contract is something other than a contract—particularly after pocketing $322,000 and a 42.55 equity interest—is not enough to avoid summary judgment.

**3. Defendants Are Equitably Estopped From Denying the Exclusive License Under the Oil Services Contract**

Finally, Defendants do not address—much less rebut—Genesis' argument that WG is equitably estopped from denying the exclusive license under the Oil

Services Contract. Genesis Memo., pp. 17-19. Specifically, WG received a 42.5% equity interest in return for providing an exclusive license, and further received $322,000 in funding. Genesis relied upon WG's promises to perform under both the Oil Services Contract and the Open Invoice Agreement. After receiving everything required of Genesis, Defendants provided nothing in return. EI, Ex. 25, Injunction Order, p. 12 ("Indeed, Defendants have not pointed the Court to *anything* they provided in exchange for the $322,000 and 42.5% equity interest in Genesis. [italics in original].")[3]

Genesis relied upon this conduct to its detriment—and continuing detriment—given the fact that Defendants' ongoing refusal to provide the OST jeopardizes Genesis' ability to close the Belize transaction. UMF 39 and cited evidence; see also, Sinclair v. Aquarius Electronics, Inc., 42 Cal. App. 3d 216, 228 (1974) (defendants equitably estopped from denying validity of royalty agreement as part of trade secret license where defendant's conduct misled and prejudiced plaintiff.) WG is equitably estopped from denying the license under the uncontroverted facts—as

---

[3] The Opp. Memo. at p. 13 describes Judge Staton's Injunction Order on this point as "factually incorrect" and as making "little sense." The record is undisputed that Defendants failed to license the OST to Genesis under the Oil Services Contract. The record is similarly undisputed that Defendants failed to provide the Oil Services Prototype or Trade Secret Report under the Open Invoice Agreement.

well as Defendants' failure to oppose the equitable estoppel argument in its Opp. Memo.

**B. Summary Judgment in Favor of Genesis on its Second Cause of Action For Breach of Oil Services Contract is Properly Entered**

For the reasons set forth above establishing Genesis' right to a permanent injunction under the DTSA—and the arguments in Genesis' Memo.-Genesis is entitled to specific performance of the exclusive license under the Oil Services Contract.[4]

**C. Summary Judgment in Favor of Genesis on its Third Cause of Action For Breach of Open Invoice Agreement is Properly Entered**

As to the third cause of action alleging breach of the Open Invoice Agreement, UMFs 79-90 and cited evidence establish that Defendants have received $322,000 in funding and have provided Genesis neither the Oil Services Prototype nor

[4] Defendants assert that the deposition testimony undercuts Genesis' claim that the Oil Services Contract was not a license. Opp. Memo., p. 8. While cherry-picking certain portions of the deposition testimony out-of-context, the Genesis corporate designee testified more than once that the Oil Services Contract was a license. See, Reply Decl. of E. Smithers, Etc., Ex B-2, p. 105:20-22 ("I said incorrect. We have a license for CP3 from the moment we signed the oil services contract"); B-3, p. 107:11-12 ("As I said before Brad, we have an exclusive license to CP3"); and B-6, p. 289:17-21 ("So if we didn't - we did have a license, and that's why David [Martin] was acting as if we had a license; otherwise, you wouldn't be going to China and offering- putting numbers on the table and particulars.") Mr. Smith as the Genesis corporate designee further testified that additional license agreements were circulated several months after the September 5, 2019 Oil Services Contract in an effort "to appease Bill [Wismann]" and get the "train back on the tracks and moving." See, B-4, p. 224:7-16.

the Trade Secret Report. EI, Ex. 25, Injunction Order, p. 12. Defendants have made no attempt to provide the Oil Services Prototype or Trade Secret Report in the last 17 months since the Injunction Order.

Defendants now argue that the Open Invoice Agreement is unenforceable because Wismann did not sign the Open Invoice Agreement. Opp. Memo, p. 20. Because Genesis has fully performed the Open Invoice Agreement by paying WG the requested funds, the agreement is not subject to the Statute of Frauds.[5] For the same reason, the absence of Wismann's signature does not preclude enforcement of the Open Invoice Agreement as an "unsigned modification" of the Oil Services Contract. Opp. Memo, p. 20. (Defendants do not explain how the Oil Services Contract bars the Open Invoice Agreement as an "unsigned modification" if the Oil Services Contract is simply an "agreement to agree" or "letter of intent.")

**D. Summary Judgment in Favor of Genesis on The Counterclaim Is Properly Entered**

**1. Defendants' Fifth Counterclaim Alleging Genesis Breached the Oil Services Contract is Meritless**

UMFs 91-94 and cited evidence establish that Genesis did not breach the Oil Services Contract by rejecting the non-exclusive domestic license proposed by

---

[5] See generally, Sutton v. Warner, 12 Cal. App. 4th 415, 421-424 (1993) (partial performance removed real estate contract from requirement of a signed writing; trial court grant of specific performance affirmed)

Defendants that required a royalty payment. At best, the proposed license was an unilateral modification of the Oil Services Contract that Genesis had every right to reject. EI, Ex. 25, Injunction Order, p. 13. The fifth counterclaim against Genesis is properly dismissed with prejudice.

### 2. Defendants Concede As Undisputed Facts 95-99 Supporting Summary Judgment on the Sixth Counterclaim

Defendants concede as undisputed UMFs 95-99—and summary judgment on that basis is properly granted.

## III. CONCLUSION

For the reasons set forth above, Genesis requests the Court enter summary judgment in its favor.

DATED: August 26, 2022 SMITHERS LAW FIRM

By: /s/________________
Edward W. Smithers

Attorneys for Plaintiffs and Counter defendants GENESIS 1 OIL SERVICES LLC, TIVOLI REALTY INC, d/b/a TIVOLI, INC., AND SLINGSHOT PEOPLE, LLC; Counter defendants, JIMMY SMITH, EGYPT MCKEE, SUSAN ADELMAN, MICHAEL WEISMAN, AND EDWARD COLLINS