ALLAN E. ANDERSON (SBN 133672)
allan.anderson@afslaw.com
OSCAR FIGUEROA (SBN 313238)
oscar.Figueroa@afslaw.com
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Telephone: 213.629.7400
Facsimile: 213.629.7401

Attorneys for Intervenor
DR. DAVID MARTIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENESIS 1 OIL SERVICES LLC, a Delaware limited liability company; TIVOLI REALTY INC., d/b/a TIVOLI, INC., a Texas corporation; and SLINGSHOT PEOPLE, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>WISMANN GROUP LLC, a California LLC; WILLIAM WISMANN, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. 8:20-cv-02114-SSS-ADS<br><br>**DR. DAVID MARTIN'S REPLY IN SUPPORT OF MOTION TO INTERVENE; TO DISSOLVE PRELIMINARY INJUNCTION ORDER OR, IN THE ALTERNATIVE, MODIFY PRELIMINARY INJUNCTION ORDER**<br><br>Hearing Date: January 6, 2023<br>Time: 2:00 p.m.<br>Ctrm: 2<br>Judge: Hon. Sunshine S. Sykes<br><br>Trial Date: May 15, 2023<br>Date Action Filed: November 2, 2023 |

## I. INTRODUCTION

Plaintiffs concede that the "very heart of the merits" of this litigation is purely a **contractual dispute** between the parties concerning whether the Oil Services Contract actually contains a license to commercialize Dr. Wismann's and Dr. Martin's trade secret, CP3. It <u>does not</u> contain any license. That is why Plaintiffs still do not have any knowledge of the highly technical and complex chemical makeup for CP3. In other words, for the past two years that this litigation has been ongoing, Plaintiffs have been completely unable to describe with any modicum of particularity what CP3 is because they never acquired a license to commercialize CP3. Only two people in the world have this valuable knowledge, Dr. Wismann and Dr. Martin. That is unsurprising since they are the only inventors and owners of CP3.

Nevertheless, Plaintiffs have prolonged this litigation on the back of the Court's Order Entering Preliminary Injunction (the "PI Order") (Dkt. 50). Dr. Martin seeks to intervene only for the limited purpose of dissolving or modifying the PI Order because its mere existence clouds Dr. Martin's ownership rights in CP3. (*See* Dkt. 50 at 2 (enjoining "Defendants, employees, representatives, and those acting in concert with them . . . ." from marketing or selling "OST" – *i.e.*, CP3)). However, that is not the only basis for Dr. Martin's proposed intervention to dissolve or modify the PI Order. On the heels of the PI Order, the Court has gone on to implicate a separate trade secret completely unrelated to this litigation, AE1, when it issued its discovery order on October 14, 2022, compelling discovery of "Chemical Formulation Documents," "Chemical Testing," and a "Limited Deposition of William Wismann" regarding same. (Dkt. 155). The Court's recent order on November 8, 2022, denying Defendants' Motion for Review (Dkt. 166) and *Ex Parte* Application for Stay (Dkt. 170), where the Court once again compelled chemical testing of CP3 and AE1, makes clear that Dr. Martin cannot stand idly by.

Despite Plaintiffs' arguments to the contrary, the Court has broad discretion to grant Dr. Martin's Motion and he should be allowed to intervene for the limited

purpose of dissolving or modifying the PI Order. Intervention and dissolution or modification of the PI Order is appropriate for the following reasons:

*First,* Dr. Martin has established the necessary elements for permissive intervention for a limited purpose pursuant to Federal Rule of Civil Procedure 24(b). Plaintiffs' argument concerning the element of independent grounds for jurisdiction is a red herring. Ninth Circuit case law makes clear that non-parties, such as Dr. Martin, seeking intervention for a limited purpose need <u>only</u> establish that the motion is timely and that there is sufficient commonality between the claims brought by the proposed intervenor and the litigation itself. Here, Dr. Martin's Motion is timely because Plaintiffs have only recently attempted to use the PI Order to enjoin non-parties from marketing or selling AE1, which they erroneously claim is "derivative" of CP3 without any basis in fact (because they do not even know what CP3 is to begin with). Further, the timeliness factor is met because dissolution of the PI Order is being presently litigated by the parties based on Defendants' recent filings, which will be heard on the same day as the instant Motion. Thus, there is no prejudice to any party. Although Plaintiffs would prefer to not have Dr. Martin intervene – that is not the standard to be considered by the Court. Additionally, it is indisputable that there is a strong nexus between Dr. Martin's claims and the litigation since it impacts the trade secrets which Dr. Martin also owns.

*Second*, the Court should dissolve the PI Order because it violates Dr. Martin's due process rights. Federal Rule of Civil Procedure 65 and Ninth Circuit case law make clear that "actual notice" is only achieved by personal service or other service, which Plaintiffs concede they never did. Plaintiffs would also need to establish that Dr. Martin aided and abetted Defendants to violate the PI Order. He has not. Plaintiffs talk out of both sides of their mouth in the opposition. On the one hand, Plaintiffs question Dr. Martin's independent ownership right to exploit CP3 because of their non-existent license, and on the other hand, Plaintiffs argue that the PI Order does not apply to Dr. Martin. Plaintiffs cannot have it both ways. Either the PI order

does apply to Dr. Martin because he cannot exercise his independent right to exploit CP3 or the PI Order does not apply to Dr. Martin and he is free to do with CP3 as he wishes. Since Plaintiffs clearly want to restrain Dr. Martin from exploiting CP3, but never gave Dr. Martin actual notice or established that Dr. Martin aided and abetted a violation of the PI Order, the PI Order should be dissolved.

Finally, what is indisputable is that Dr. Martin never assigned his ownership rights to Plaintiffs over any of his trade secrets. It is also indisputable that Plaintiffs have been completely unable to describe CP3 with sufficient specificity because they never acquired the technology. Thus, Plaintiffs' "ownership" claims still fail to establish the threshold DTSA requirement of ownership, which warrants dissolution of the PI Order. Dr. Martin continues to be adversely affected in his efforts to increase capital investment for ACE as long as the PI Order continues to cloud his ownership rights in CP3 and now AE1. Dissolution of the PI Order is warranted. Alternatively, for these same reasons, the Court should exercise its broad discretion to significantly increase the bond amount to not less than $2,000,000.00, given the circumstances here.

## II. THE COURT SHOULD ALLOW DR. MARTIN TO INTERVENE

### A. An Independent Ground for Jurisdiction is Not Required Here

Dr. Martin has established the necessary elements for permissive intervention required by FRCP 24(b), which are timeliness and nexus. No independent ground for jurisdiction is required because Dr. Martin is not asking the Court to rule on additional claims nor is he seeking to become a party to the entire action. Rather, Dr. Martin seeks to intervene to request that the Court exercise power that it already has – *i.e.*, the power to dissolve the PI Order. *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002); *Ware v. Bayview Loan Servicing, LLC*, No. 13-CV-1310 JLS NLS, 2013 WL 5308303, at *2 (S.D. Cal. Sept. 18, 2013) (citing *Santos v. Reverse Mortg. Solutions, Inc.*, No. 12–3296–SC, 2012 WL 4891597, at *7 (N.D. Cal. Oct. 12, 2012). The independent ground for jurisdiction element does not have

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

8:20-cv-02114-SSS-ADS

- 4 -

REPLY ISO MOTION TO INTERVENE
AND TO DISSOLVE OR MODIFY PI
ORDER

to be met in these circumstances. *Barnes v. JFK Mem'l Hosp., Inc.*, No. EDCV17681JGBSPX, 2018 WL 10911887, at *2 (C.D. Cal. July 31, 2018).

The independent ground for jurisdiction element is further unnecessary here because Dr. Martin is not a party to the Oil Services Contract and does not seek to intervene in any pending contract related claims. However, as an owner of CP3 (and AE1), Dr. Martin would have an interest in the outcome of Plaintiffs' DTSA claim for misappropriation of trade secrets. Since the DTSA is a federal statute, federal question jurisdiction would exist and the independent ground for jurisdiction element would not apply. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) ("Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away."). Unless Plaintiffs are dismissing their DTSA claim (at which time this Court would lose jurisdiction), Dr. Martin does not need an independent ground for jurisdiction as long as federal question jurisdiction exists.

### B. Dr. Martin's Motion is Timely

Dr. Martin's Motion is timely under the circumstances. Despite the Court entering the PI Order on March 23, 2021, Plaintiffs sat on it for over a year and half. Indeed, Plaintiffs to this day still have no greater knowledge of the chemical composition of CP3 than they did on September 5, 2019, when they entered into the Oil Services Contract. However, the Court's order from October 14, 2022, compelling discovery of CP3 and AE1 (Dkt. 155) as well as the Court's recent order on November 8, 2022, denying Defendants' Motion for Review (Dkt. 166) and *Ex Parte* Application for Stay (Dkt. 170) and once again compelling production, have made it necessary for Dr. Martin to seek leave to intervene. Dr. Martin's Motion is timely because Plaintiffs are actively and improperly attempting to use the PI Order to enjoin him from marketing and selling CP3 and now AE1.

It is clear that simply submitting a few declarations in support of Defendants' motions has not been enough. Particularly troubling, AE1 is a highly technical and

complex product that was independently created from CP3 and completely unrelated to the case as it was not contemplated by the Oil Services Contract. Plaintiffs have not provided evidence to the contrary. The PI Order also does not cover other products aside from marketing or selling CP3. (Dkt. 50 at 21). Yet, on the heels of the PI Order, Plaintiffs have sought discovery equating to specific performance from Defendants to manufacture samples of CP3 and AE1 to turn over to Plaintiffs for comparative testing to determine if they are same. Plaintiffs' actions of trying to "discover" what the trade secrets they claim to own is unprecedented and unravels the merits of their alleged DTSA claim. The time to dissolve the PI Order is ripe.

Plaintiffs cite extreme case law examples to argue that Dr. Martin's Motion is untimely. For example, in *League of United Latin American Citizens v. Wilson*, the Ninth Circuit affirmed the district court's denial of a motion to intervene in part because the non-party sought to intervene as a *full* participant in the case twenty-seven months after it was initiated. 131 F.3d 1297, 1304 (9th Cir. 1997). This case is inapposite and unlike the circumstances here. Dr. Martin is only seeking to intervene for the limited purpose of seeking dissolution or modification of the PI Order – a power within the Court's broad discretion. Moreover, the dissolution of the PI Order is being actively litigated by Defendants as well. The instant Motion and Defendants' motion will be heard on the same day so there will be no delay by allowing Dr. Martin to intervene. Unsurprisingly, Plaintiffs are the only parties claiming prejudice, which is expected as they would prefer not to contend with another party seeking to dissolve the PI Order but that is not a valid reason.

### C. A Common Question of Law and Fact is Present

There is also a nexus between the Dr. Martin's purpose for intervening and the claims in this action – namely, protection of his valuable trade secrets. Dr. Martin's trade secret rights are in jeopardy as Plaintiffs are essentially seeking through the PI Order and other requests to learn the chemistry comprising CP3 and AE1, which as to CP3 is the ultimate remedy sought in the case. Given the intertwined nature of the

issues in this case and Dr. Martin's purpose for intervening, good cause exists to allow the limited intervention requested.

## III. THE COURT SHOULD DISSOLVE THE PI ORDER

### A. The PI Order Violates Dr. Martin's Due Process Rights

The Court should dissolve the PI Order because it violates Dr. Martin's due process rights. On the one hand, Plaintiffs argue that Dr. Martin does not have an independent right to exploit CP3 in light of their non-existent license in the Oil Services Contract, and on the other hand, Plaintiffs also argue that "[t]he Injunction Order did not grant relief against Dr. Martin." (Dkt. 187 at 4, 19). Plaintiffs' purported license to CP3 can never be "exclusive" to oil field services if another party could freely exploit the same technology, so it is easy to see right through Plaintiffs doublespeak. They intend to prevent Dr. Martin from exercising his ownership rights over CP3 and now AE1. Importantly, AE1 was never contemplated to be part of the Oil Services Contract and new was. Nevertheless, it is indisputable that non-parties are bound by injunctions only if they have "actual notice" (achieved by personal service or other service) and either aids and abets the enjoined party or is legally identified with the enjoined party. *See CFPB v. Howard Law*, P.C., 671 F. App'x 954, 955 (9th Cir. 2016) (citing *United States v. Baker*, 641 F.2d 1311, 1313 (9th Cir. 1981); *see also* Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party.). Plaintiffs concede they did not personally serve Dr. Martin with the PI Order.

Plaintiffs have failed to give Dr. Martin actual notice or establish that Dr. Martin aided and abetted the violation of the PI Order. Nevertheless, Plaintiffs have taken overt acts adversely affecting Dr. Martin's trade secret rights, including the contempt motion (Dkt. 94) against Defendants and the motion to compel Defendants to produce documents and samples of CP3 and AE1 (Dkt. 142). Although neither of these were filed against Dr. Martin, they involve Dr. Martin's rights in CP3 and AE1.

Depriving Dr. Martin of the opportunity to contest the findings of liability in this case through Plaintiffs strategic pleading warrants dissolution of the PI Order.

### B. Plaintiffs' Failed to Establish "Ownership" of a Trade Secret

Dissolution of the PI Order is also warranted because a technical and complex trade secret such as CP3 needs to be defined with specificity in order to establish a DTSA claim – Plaintiffs have failed to do so. *AlterG, Inc. v. Boost Treadmills LLC*, 388 F.Supp.3d 1133, 1146 (N.D. Cal. 2019) (dismissing DTSA claim because Plaintiff failed to allege with greater specificity the types of trade secrets that were misappropriated and the exact technology to which they pertain). As a result, the problems caused by the PI Order are all the more glaring because Defendants who actually have the knowledge are fending off a DTSA claim from Plaintiffs who are *without* any knowledge about the trade secret they contend has been misappropriated. Plaintiffs are unable to describe with specificity what they believe the CP3 technology is because they are not true "owners" of CP3 – they never acquired it.

Plaintiffs' purported "ownership" of CP3 by way of the Oil Services Contract is false. First, and foremost, Plaintiffs admit in their opposition that the "very heart of the merits" of this case is whether the Oil Services Contract actually grants them a license to CP3 in the oil services field. (Dkt. 187 at 4). It is clear that the Oil Services Contract never conferred such a license because as of this date Plaintiffs have never even acquired possession of CP3 from Dr. Wismann. Plaintiffs certainly were not conferred "ownership." It is further indisputable that Plaintiffs never acquired "ownership" of CP3 from Dr. Martin. Plaintiffs have failed to establish the ownership element of their DTSA claim. *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017) (quoting *Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, No. 14-cv-1409, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015)). Simply put, Plaintiffs cannot establish that they "own" the CP3 technology and the PI Order should be dissolved for this reason as well.

### C. Modification to Increase the PI Order Bond

Alternatively, for these same reasons, the Court should exercise its broad discretion to significantly increase the bond amount to not less than $2,000,000.00, given the circumstances here. Plaintiffs' opposition exposes their desire to restrain Dr. Martin's trade secret rights in CP3 (and now AE1) because of a non-existent license, but in the same breath opposing Dr. Martin's request to intervene by claiming that the PI Order does not apply to Dr. Martin. The PI Order and subsequent orders have entangled Dr. Martin's trade secret rights in this litigation despite not being a party. Dr. Martin has also provided in his declaration that he and ACE are suffering economic harm by the issuance of the PI Order as the opportunities to raise capital investment for ACE have been significantly diminished. Dr. Martin Decl., ¶ 33. For these reasons, and the reasons explained throughout, the Court should exercise its broad discretion to increase the bond Plaintiffs must post to not less than $2,000,000.00.

### IV. CONCLUSION

For the foregoing reasons, Dr. Martin respectfully requests that the Court grant the Motion so that he may intervene for a limited purpose in this litigation. Further, for the foregoing reasons, Dr. Martin respectfully requests that the PI Order be dissolved. If the Court is not inclined to dissolve the PI Order, Dr. Martin requests that the Court modify the PI Order to increase the bond amount.

Dated: December 23, 2022

**ARENTFOX SCHIFF LLP**

By: */s/ Allan E. Anderson*
Allan E. Anderson
Oscar Figueroa
Attorneys for Intervenor
DR. DAVID MARTIN